**Louis RANIERO, Plaintiff,**

v.

**Abraham ANTUN, Francis Mona, Felina Del Nodal, Adelaide Leone, Carlos Perez, Joseph R. Marini, Thomas Highton, individually and in their official capacities, Union City Board of Education, Defendants.**

Civil Action No. 95–580 (AJL).

United States District Court,
D. New Jersey.

Aug. 13, 1996.

Nancy Iris Oxfeld, Balk, Oxfeld, Mandell & Cohen, Newark, NJ, for Plaintiff.

Kevin Paul Kovacs, Purcell, Ries, Shannon, Mulcahy & O'Neill, Bedminster, NJ for Defendants.

## OPINION

LECHNER, District Judge.

This is an action by Louis Raniero ("Raniero") against Abraham Antun ("Antun"), Francis Mona ("Mona"), Felina Del Nodal ("Del Nodal"), Adelaide Leone ("Leone"),

Carlos Perez ("Perez"), Joseph Marini ("Marini"), Thomas Highton ("Highton"), individually and in their official capacities (the "Individual Defendants"), and the Union City, New Jersey Board of Education (the "Board") (collectively, the "Defendants"). Federal question jurisdiction is asserted pursuant to 28 U.S.C. §§ 1331 and 1343. Raniero alleges a cause of action, pursuant to 42 U.S.C. § 1983, for violations of his rights under the First and Fourteenth Amendments to the United States Constitution. Diversity jurisdiction is not alleged.

Currently pending is a motion for summary judgment filed by the Defendants (the "Motion for Summary Judgment"), pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Motion for Summary Judgment is granted.

*Facts*

A. *Parties*

Raniero is a school teacher who has been employed by the Board for more than twenty years. Complaint, ¶ 1. The Board is a public entity that provides public education to all eligible residents of Union City. *Id.*, ¶ 2. During the entire period relevant to the Complaint, Antun, Mona, Del Nodal, Leone and Perez were all Board members. Moving Brief at 4. At all relevant times, Highton was the Union City Superintendent of Schools and Marini was the Assistant Superintendent of Schools. *Id.*

B. *Background*

During the two years prior to filing the Complaint, Raniero applied for promotions in the Union City school district to Assistant Principal, Supervisor Vocational Education—Technical Subjects, Curriculum Resource Teacher and Guidance Counselor; he was not

selected for any of these positions. Complaint, ¶ 12. During this same period, the Board filled a total of eight positions Raniero applied for, and for which the parties agree he was qualified. Moving Brief at 4. These included five Assistant Principal, one Supervisor of Vocational Education—Technical Subjects, one Guidance Counselor and one Curriculum Resource Teacher positions. Opposition Brief at 8–10.

Raniero alleges he was "equally qualified, if not more qualified" than the persons selected for promotion to Assistant Principal and Supervisor Vocational Education—Technical Subjects. Complaint, ¶ 13(I), (1). Raniero further alleges he was "more qualified" than the persons selected for the positions of Curriculum Resource Teacher and Guidance Counselor. *Id.*, ¶ 13(o), (q).

Raniero alleges he was denied promotion "solely due to [his] refusal to take part in politics in Union City and/or Hudson County." Complaint, ¶ 13. Raniero specifically alleges he was denied promotion due to his lack of involvement with the Alliance Civic Organization ("ACO"). *Id.*

The ACO is a local civic and charitable organization that "supports candidates for political office at the local, state and national level." Moving Brief at 4. The ACO also conducts two fund raising dances a year. Opposition Brief at 7. "A dance is held each spring at $1,000 a head.... Each fall a dance is held that costs either $125.00 or $250.00 a person." *Id.* The ACO, additionally, sponsors annual charity events to benefit needy citizens of Union City. *Id.* These events include "a Christmas party with toys for children, St. Patricks Day and Columbus Day meals for senior citizens and the distribution of turkey for needy citizens at Thanksgiving." *Id.*

---

1. Plaintiffs submitted: Brief in Opposition to Defendants' Motion for Summary Judgment (the "Opposition Brief"); Appendix in Opposition to Defendants' Motion for Summary Judgment (the "Opposition Appendix") attaching exhibits.

Defendants submitted: Memorandum of Law in Support of Defendants' Motion for Summary Judgment (the "Moving Brief"); Certification of Kevin Kovacs, Esq. (the "Kovacs Cert.") attaching exhibits; Reply Brief.

The exhibits to the submissions include transcripts of depositions with various individuals, which are cited as: [name] Dep. at [page].

Neither party submitted a statement pursuant to Rule 12(G) of the General Rules for the District of New Jersey; both parties, however, set forth, within their respective briefs, the facts that are not in dispute. The parties' respective statements of undisputed facts are treated as their Rule 12(G) statements.

All of the Individual Defendants were involved with the ACO at some level during the relevant time period. Moving Brief at 4. Seven of the eight candidates who were selected for promotion to the positions sought by Raniero were also involved with the ACO.[2] *Id.;* Complaint, ¶ 13.

Defendants respond the Board had legitimate, non-discriminatory reasons to select the successful candidates instead of Raniero. Moving Brief at 5–6. Raniero did not participate in any after-school educational programs, did not teach or work for the school district during the summer break and was not regularly involved with coaching athletic teams. *Id.* Instead, Raniero "spent his summers as co-manager of a pool ... and his evenings running a restaurant." *Id.* at 2; *see* Raniero Dep. at 19, 93. Raniero's attempt to establish a job placement program at Emerson High School failed. Kovacs Cert., ¶ 4. Raniero, moreover, does not dispute that he did not submit letters of recommendation or a resume with his applications. *See* Moving Brief at 3. Defendants argue these facts demonstrate Raniero's efforts to obtain the promotions exhibited a lack of commitment. Moving Brief at 3.

Raniero merely argues the Defendants' response lacks credibility. Opposition Brief at 13. He supports his argument by pointing to alleged inconsistencies in Marini's deposition testimony as to the selection process and implies various Individual Defendants were untruthful in their testimony regarding the ACO. Id. at 17. He states Marini's consideration of extracurricular activities and additional documentation such as letters of recommendation was improper because "it was never announced that [the extracurricular] activities would be considered" and "applicants were never advised to submit [letters

of recommendation] ... in their application." Opposition Brief at 13.

### 1. *The Selection Process*

When a position becomes available in the Union City school district, the position is posted throughout the district. Opposition Brief at 5. The posting provides prospective applicants with notice of the opening and lists the necessary qualifications. *Id.* Following the submission of applications, a list of applicants is created. *Id.* Marini then reviews the applications and interviews the applicants, at times in the company of the supervisor who will work with the successful applicant. *Id.* Marini makes a recommendation to Highton, *id.* at 6, who then recommends the selectee to the Board. Moving Brief at 5. At open meetings, the Board decides whether to approve the recommendation. *Id.*

### 2. *Assistant Principals.*

The competition for the available Assistant Principal positions was apparently fierce. Defendants contend Raniero was one of twenty-nine applicants. Moving Brief at 11. Marini testified "selecting [five] candidates from the highly qualified pool was tough but ... Raniero was not even in the running." *Id.* (citing Marini Dep. at 127–28). The five successful candidates for the Assistant Principal positions were Johnson, Ronald Treanor ("Treanor"), Robert Wendelken ("Wendelken"), Tony Perez ("Tony Perez") and Benjamin Perez ("Benjamin Perez"). Complaint, ¶ 13(d); Moving Brief at 12.

#### a. *Johnson's Application*

Johnson holds a Masters of Arts Degree in Administration, a Masters Degree in Student Personnel Services and a Bachelor of Arts Degree. Kovacs Cert., Exhibit C (Johnson Resume). Her resume also lists a "Certifi-

---

**2.** The Complaint does not allege Barbara Johnson ("Johnson"), one of the successful candidates for Assistant Principal, was involved with the ACO. Raniero argues Johnson was involved with the ACO, but concedes her involvement occurred only after she had been selected for promotion and that she merely attended annual fund-raising dinners. Opposition Brief at 10. As well, the Complaint does not allege any involvement with the ACO on the part of Michele Frenza Fisk ("Fisk"), a successful candidate for

promotion to Curriculum Resource Teacher. Complaint, ¶ 13(m)–(o). Raniero apparently has abandoned his claim of discrimination regarding the position filled by Fisk. Opposition Brief at 9; Moving Brief at 7. Finally, the Complaint does not allege involvement of DiLorenzo with the ACO, Complaint, ¶ 13(p)–(q), although Raniero alleges DiLorenzo "had been involved with the [ACO] for over 10 years at the time of her appointment." Opposition Brief at 9.

cate in Supervision." *Id.* Johnson had approximately thirty years of teaching experience at the time she was promoted. Marini Dep. at 67. She previously held the position of Helping Teacher, a position akin to assistant principal of a grammar school. *Id.* She was active in extracurricular activities, both during the school year and during the summer months. *Id.* at 69. Her application included a resume listing her qualifications and a letter of recommendation from Lucy Soovajian, who at the time was the Elementary Supervisor for the Board's Office of Academic Programs. *Id.* Despite his allegation that he "was equally qualified, if not more qualified" than Johnson, Complaint, ¶ 13(I), Raniero testified he did not know Johnson and knew nothing about her qualifications. Raniero Dep. at 60.

### b. *Treanor's Application*

Treanor included with his application a letter from Mrs. R. Hernandez ("Hernandez"), the Vice Principal of Jefferson Magnet School in Union City, highly recommending him for a position of Administrator. Kovacs Cert., Exhibit C (Hernandez Letter, dated June 1993). Hernandez opined Treanor had the "skill, ability and experience to become an exceptional principal/vice principal." *Id.* Marini testified he was impressed with Treanor, describing him as "brilliant, a workaholic with a tremendous personality who had received a lot of accolades." Moving Brief at 15 (citing Marini Dep. at 100).

### c. *Wendelken's Application*

Wendelken holds a Masters Degree in Administration and Supervision, a Bachelor of Science Degree, and holds State of New Jersey Department of Education Certificates ("Certificates") in Social Studies, English, Language and Arts for grades seven through twelve. Kovacs Cert., Exhibit C (Wendelken Resume). He also holds Certificates for the positions of Principal/Supervisor, Assistant Superintendent for Business and School Business Administrator. *Id.* When he submitted his application, he had twenty-three years of teaching experience, had held the position of Head Teacher in Charge of Activities since 1992 and was a High School Varsi-

ty Basketball Coach since 1988. *Id.* He was also the President of the Board of Education for the City of Hoboken (the "Hoboken Board") and served on the Hoboken Board's finance and fiscal plan facilities committees. *Id.*

Marini testified he was impressed with Wendelken, observing Wendelken was involved with extracurricular activities and was a strict disciplinarian. Marini Dep. at 94–95. Wendelken submitted a letter of recommendation from Robert Fazio ("Fazio"), the Principal of the Columbus School, in support of his application (the "Fazio Recommendation"). *Id.* at 97–98. Fazio described Wendelken as an "outstanding candidate" who would improve the Union City school district if selected. Kovacs Cert., Exhibit C (Fazio Recommendation).

### d. *Tony Perez's Application.*

Tony Perez spent more than ten years as a Guidance Counselor at Emerson High School in Union City. Kovacs Cert., Exhibit C (letter of Alfred J. Hiquera ("Hiquera"), dated 25 June 1993). His application included a letter of recommendation letter from Hiquera, who was the Principal of Emerson High School. *Id.* Hiquera highly recommended Tony Perez for the position of Assistant Principal and observed that his "professional experience, academic training and certification make him a highly qualified candidate [for the job]." *Id.*

### e. *Benjamin Perez's Application*

Benjamin Perez was a department chairperson at Union Hill High School and had experience as an administrator. Marino Dep. at 98. He is bilingual, served as a soccer coach and was involved with other extracurricular activities. *Id.* During the summer months he helped to develop the Union High School's curriculum. *Id.* at 99–100.

### f. *Raniero's Application*

The Defendants concede Raniero met the minimum requirements for selection to Assistant Principal. Moving Brief at 4. Raniero testified he had "22 or 23 years of experience" as a teacher. Raniero Dep. at 42. He

stated his position as a director of the Rutherford Adult School and other certifications he possessed, such as computer teacher, further qualified him for appointment to Assistant Principal. *Id.* at 42–43.

Raniero, however, never interviewed for the Vice Principal positions because the interview dates conflicted with his summer job as co-manager of a pool. *Id.* at 18–20. Instead, he signed an interview waiver form ("Interview Waiver Form") which the Board requires to be completed when an applicant wishes to waive the interview procedure. Kovacs Cert., Exhibit C (Interview Waiver Form). Raniero stated Marini suggested he sign the Interview Waiver Form and assured him that not interviewing would not impede his chances for promotion. Raniero Dep. at 28. Raniero's testimony reveals he made no effort to reschedule his interviews prior to receiving this assurance. *Id.* at 20, 27. The Interview Waiver Form was executed only after Marini made two attempts to schedule interviews with Raniero. *Id.* at 18–20.

### 3. Supervisor of Vocational Education—Technical Subjects

The Board selected Richard Quagliarello ("Quagliarello") for the position of Supervisor of Vocational Education—Technical Subjects. Complaint, ¶ 13(j). When Quagliarello applied for the position, he had twelve years experience as a high school Business Education Teacher and eight years experience as a Vocational Guidance teacher. Kovacs Cert., Exhibit C (Quagliarello Application, dated 17 May 1993). He held Certificates in business education, marketing and distribution education and a Masters of Arts Degree in student personnel services. *Id.* Marini testified Quagliarello's experience in vocational education was an important factor in his selection. Marini Dep. at 42. Quagliarello was also involved with extracurricular activities, both after-school and during the summer. *Id.* at 56–7.

Marini testified he believed Quagliarello was the better candidate because of his experience in establishing new programs, helping to place students in summer jobs and his voluntary work. Marini Dep. at 56–57. Raniero, on the other hand, was not involved in extracurricular activities. *Id.* at 57. Raniero's sole effort to establish a job placement program failed. Kovacs Cert., ¶ 4. Highton testified the failure occurred because Raniero did not follow the "guidelines" Highton established for the program. *Id.*

Raniero testified he was unsure what the position of supervisor of vocational education entailed. Raniero Dep. at 84. He stated the job description was "vague" and testified: "I have an opinion to what [the supervisor of vocational education] did. What they actually entailed in the position, I don't know. . . . I don't think there is a vocational education department." *Id.* at 86–87. Despite his allegation that he "was equally if not more qualified than Quagliarello for the [Supervisor Vocational Education—Technical Subjects] position," Complaint, ¶ 13(l), Raniero testified he knew nothing about the position. Raniero Dep. at 87.

Raniero testified his experience as part owner and co-manager of a restaurant better qualified him for the position. Raniero Dep. at 90–91. Raniero worked at the restaurant between eighteen and twenty-eight hours a week during the school year. Raniero Dep. at 93. Defendants argue Raniero's time commitment at the restaurant and at the pool during the summer months kept him from working in any after-school or summer extracurricular activities. Moving Brief at 5–6.

### 4. Guidance Counselor

The job opening for Guidance Counselor was posted on 21 May 1992. Kovacs Cert., Exhibit C (Job Opening Posting, dated 21 May 1992). The posting indicated the successful candidate would report to the Supervisor of Student Personnel Services and the School Principal. *Id.* The Supervisor of Student Personnel Services was Jack Keshish ("Keshish"). Marini Dep. at 61.

Karen DiLorenzo ("DiLorenzo") was the successful candidate for the position of Guidance Counselor. Complaint, ¶ 13(p); Moving Brief at 9. Marini described DiLorenzo as a "born teacher." Marini Dep. at 62. DiLorenzo holds a Master of Arts Degree in Counseling and a Certificate in student per-

sonnel services. Kovacs Cert., Exhibit C (DiLorenzo Resume). She had eight years of teaching experience and also had counseling experience. *Id.* During the summer she worked as "Master Teacher" for the "Basic Skills Program." Id. In 1989, she worked with Keshish to develop a counseling program at the Hudson School. *Id.* Marini testified Keshish, who participated in the interviews, recommended DiLorenzo. Marini Dep. at 61. In 1992, she worked for the Board as "Curriculum Developer, Social Studies, grades four through eight." *Id.* Marini observed DiLorenzo taught English as a second language to adults. *Id.* at 61. Finally, Marini testified he believed DiLorenzo would have a better rapport with the students than would Raniero. *Id.* at 62.

Raniero testified he was unaware of DiLorenzo's prior work with Keshish or her work as Curriculum Developer. Raniero Dep. at 136. He argues, however, she was selected because she worked for the ACO and contends "she attended a dinner for which she had to pay $125.00" immediately after she was selected for promotion. Opposition Brief at 9.

### 5. *Curriculum Resource Teacher*

Raniero applied for two Curriculum Resource Teacher ("CRT") positions. Complaint, ¶ 12; Moving Brief at 6. Raniero alleges his application was denied for both positions solely because of his refusal to take part in politics. Complaint, ¶ 13. In opposing the Motion for Summary Judgment, however, Raniero argues only that he was discriminated in his application for one of the CRT positions, which was filled by Frank DeRiso ("DeRiso"). Opposition Brief at 9.

DeRiso, who has been teaching since 1978, holds a Masters Degree in mathematics, a Bachelor of Arts Degree and a Certificate in mathematics, grades seven through twelve. Kovacs Cert., Exhibit C (DeRiso Resume). *Id.* DeRiso had coached high school tennis for six years and, when he applied for promotion, he was coaching girls' basketball. *Id.* He was also "assistant to the Head of Activities" when he applied for promotion. *Id.* Marini observed the successful candidate for the CRT position would work with

seventh and eighth grade students and DeRiso had experience working with these classes. *Id.* at 8 (citing Marini Dep. At 71). Raniero, on the other hand, "taught business classes at the high school level." *Id.* Marini concluded: "[DeRiso] was involved in his town, he was going to stay there. He was going to work for this Board of Education, he was going to devote time morning, noon, and night, weekends. I liked that." Marini Dep. At 79. Highton testified he considered DeRiso better suited for the position because of his "strong math background." Kovacs Brief, ¶ 4.

In support of his application, DeRiso submitted a resume specifically tailored for the CRT positions and two letters of recommendation, one from Fazio and one from Wendelken. Kovacs Cert., Exhibit C (undated Fazio letter, and Wendelken letter, dated 7 July 1993).

Raniero never interviewed for the CRT positions because the interview dates conflicted with his summer job as co-manager of a pool. Raniero Dep. at 19–20. Raniero testified he could not remember if he submitted a resume and did not include any letters of recommendation with his application for the CRT positions. Raniero Dep. at 114, 124.

### C. *The Complaint*

As indicated, diversity jurisdiction is not alleged. Raniero alleges the Defendants, acting under color of state law, violated his rights under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"). Complaint, ¶¶ 7, 14. Specifically, Raniero alleges he was not promoted to any of the above-described positions because he was not involved in Union City politics. *Id.,* ¶ 13. Raniero alleges Defendants' actions in failing to promote him violated his right of free association. *Id.,* ¶ 14. Defendants' actions, according to Raniero, were "maliciously and intentionally designed" to deprive him of his rights and expose him to ridicule and scorn. *Id.,* ¶ 16. Finally, Raniero alleges Defendants' actions have been "arbitrary, capricious and discriminatory, entitling [him] to compensation for

emotional distress and embarrassment." *Id.,* ¶ 17.

The *ad damnum* clause of the Complaint seeks a declaratory judgment that the "Defendants' acts, policies, practices and procedures ... have violated and continue to violate the rights of [Raniero] as secured by the First and Fourteenth Amendments." *Ad damnum* clause, ¶ (a). Raniero seeks to enjoin Defendants preliminarily and permanently from discriminating against him for "his participation or lack thereof in the political process" and to require Defendants to immediately promote Raniero "retroactively to the highest paid of those positions for which he has applied." *Id.,* ¶¶ (b)–(c). Raniero additionally seeks damages for "all salary, compensation and other benefits of employment lost since the date he was refused promotion," compensatory damages for his pain and suffering and punitive damages. *Id.,* ¶¶ (d)–(f). Finally, Raniero seeks "such additional relief as the Court deems just and proper" and reasonable attorneys' fees and disbursements. *Id.,* ¶¶ (g)–(h).

*Discussion*

A. *Summary Judgment Standard of Review*

To prevail on a motion for summary judgment, the moving party must establish "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996); *Witco Corp. v. Beekhuis,* 38 F.3d 682, 686 (3d Cir.1994). The present task is to determine whether genuine issues of material fact exist and whether Defendants are entitled to judgment. A district court, however, may not resolve factual disputes on a motion for summary judgment. *Linan–Faye Constr. Co. v. Housing Auth.,* 49 F.3d 915, 926–27 (3d Cir. 1995) ("at the summary judgment stage, 'the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial'") (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)); *Desvi,*

*Inc. v. Continental Ins. Co.,* 968 F.2d 307, 308 (3d Cir.1992).

In considering a motion for summary judgment, all evidence submitted must be viewed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Healey v. Southwood Psychiatric Hosp.,* 78 F.3d 128, 130–31 (3d Cir.1996); *General Ceramics Inc. v. Firemen's Fund Ins. Cos.,* 66 F.3d 647, 651 (3d Cir.1995); *Meyer v. Riegel Products Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983) (the court must resolve "all inferences, doubts and issues of credibility ... against the moving party"), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984).

When the resolution of issues depends wholly upon the interpretation of specific statutory language and the applicable law, summary judgment is appropriate. *See DiBiase v. SmithKline Beecham Corp.,* 48 F.3d 719, 724 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995); *see also Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.) ("summary judgment is proper where the facts are undisputed"), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985); *Estate of Reddert v. United States,* 925 F.Supp. 261, 265 (D.N.J.1996).

In addition, when the nonmoving party bears the burden of proof at trial, the moving party is entitled to summary judgment by showing "there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. Once the movant demonstrates an essential element of the nonmovant's case is lacking, the nonmovant must come forward with sufficient evidence to demonstrate there is a factual controversy as to that element. *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2509–10; *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130–31 (3d Cir.1995); *Witco,* 38 F.3d at 686. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512;

*Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355–56 (nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts"); *accord Siegel,* 54 F.3d at 1130–31; *Nevets C.M., Inc. v. Nissho Iwai Am. Corp.,* 726 F.Supp. 525, 534 (D.N.J.1989), *aff'd without Op'n,* 899 F.2d 1218 (3d Cir.1990).

If the nonmovant fails to make a sufficient showing regarding an essential element of its case upon which it will bear the ultimate burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted. *Celotex,* 477 U.S. at 321, 106 S.Ct. at 2551–52; *Siegel,* 54 F.3d at 1130–31; *see also Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir.1993) ("[s]ummary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant").

### B. *Section 1983*

Section 1983 provides a cause of action against a person "who, under the color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The purpose of Section 1983 is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (1992) (citing *Carey v. Piphus,* 435 U.S. 247, 254–57, 98 S.Ct. 1042, 1047–49, 55 L.Ed.2d 252 (1978)); *see also Blanche Road Corp. v. Bensalem Township,* 57 F.3d 253, 265 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 303, 133 L.Ed.2d 208 (1995); *Bolden v. SEPTA,* 21 F.3d 29, 34 (3d Cir.1994).

To state a claim under Section 1983, Raniero must allege (1) conduct committed by a person acting under color of state law; and (2) that this conduct deprived him of "rights, privileges, or immunities secured by the Constitution and laws" of the United States."

*Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 662–63, 88 L.Ed.2d 662 (1986); *see West v. Atkins,* 487 U.S. 42, 48–49, 108 S.Ct. 2250, 2254–2255, 101 L.Ed.2d 40 (1988); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978); *Kost v. Kozakiewicz,* 1 F.3d 176, 184 (3d Cir.1993); *Shaw by Strain v. Strackhouse,* 920 F.2d 1135, 1141–42 (3d Cir.1990).

In support of the instant motion, Defendants argue Raniero cannot satisfy the second element of a claim under Section 1983; Defendants contend the denial of a prospective job promotion does not constitute a denial of either a property or a liberty interest. Moving Brief at 16–17. Defendants additionally argue Raniero cannot prove his First Amendment rights have been violated. Moving Brief at 18–20.

### C. *Raniero's Claim Pursuant to the First and Fourteenth Amendments*

As indicated, Raniero alleges Defendants' actions violated his rights under the First and Fourteenth Amendments to the United States Constitution. Complaint, ¶ 6, 14. The Due Process Clause of the Fourteenth Amendment provides three distinct types of Constitutional protection. "First, the Clause incorporates many of the specific protections defined in the Bill of Rights.... Second, the Due Process Clause contains a substantive component that bars certain arbitrary wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). Third, the Due Process Clause contains a procedural component that protects against the "deprivation by state action of a constitutionally protected interest in 'life liberty or property' ... without due process of law." *Id.* (quoting *Parratt,* 451 U.S. at 537, 101 S.Ct. at 1913–14; emphasis in original omitted).

Defendants argue the Motion for Summary Judgment must be granted because Raniero cannot show he was entitled to promotion. Moving Brief at 16–17. The cases relied

upon by Defendants, however, do not involve First Amendment claims. *See id.* at 16–17 (citing *Hunter v. City of Warner Robins, Ga.,* 842 F.Supp. 1460 (M.D.Ga.1994); *Brown v. County of Jackson,* 804 F.Supp. 939 (E.D.Mich.1992); *Santella v. City of Chicago,* 721 F.Supp. 160 (N.D.Ill.1989)). Raniero does not argue Defendants' actions have violated any property or liberty interest he possesses. Opposition Brief at 2–3. Raniero, in fact, concedes he "has no right to promotion to any of the positions at issue herein." *Id.* at 19. The fact that Raniero is not entitled to the promotions has no bearing on his First Amendment claim. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 72, 110 S.Ct. 2729, 2735–36, 111 L.Ed.2d 52 (1990) (citing *Perry v. Sindermann,* 408 U.S. 593, 596–98, 92 S.Ct. 2694, 2696–98, 33 L.Ed.2d 570 (1972)); *see also Branti v. Finkel,* 445 U.S. 507, 514–15, 100 S.Ct. 1287, 1292–93, 63 L.Ed.2d 574 (1980); *Mt. Healthy City School Dis't Bd. of Ed. v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574–75, 50 L.Ed.2d 471 (1977); *Elrod v. Burns,* 427 U.S. 347, 359–60, 96 S.Ct. 2673, 2682–83, 49 L.Ed.2d 547 (1976).

■ Raniero alleges Defendants violated his First Amendment Rights because he was not promoted due to his lack of involvement with the ACO. Complaint, ¶ 13. Discrimination against public employees such as Raniero based upon their political party affiliation and support violates their First Amendment rights. *Rutan,* 497 U.S. at 75, 79, 110 S.Ct. at 2737, 2739–40; *see Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 705–06 (1st Cir.1993).

In *Rutan,* the Court held that promotions, transfers and recalls following layoffs based upon political affiliation or support are an impermissible infringement on the First Amendment rights of public employees. 497 U.S. at 75, 110 S.Ct. at 2737. The *Rutan* Court observed these employees "will feel a significant obligation to support political positions held by their superiors, and to refrain from acting on the political views they actually hold, in order to progress up the career ladder." *Id.* Two of the petitioners in *Rutan,* in fact, alleged they were denied promotions because they had not worked for or

supported a political organization. *Id.* at 67, 110 S.Ct. at 2733. It therefore appears Raniero's disinclination to become involved with the ACO is "activity" protected by the First Amendment. *Id. Rutan* forecloses any question whether Raniero's disinclination to be involved with the ACO is protected "activity." *Id.* at 73–75, 110 S.Ct. at 2736–37.

■ To succeed on his First Amendment Claim, Raniero must show: (1) his conduct was "constitutionally protected"; and (2) his conduct was a " 'substantial factor' or ... a 'motivating factor' " in the Board's decision not to promote him. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *see Pro v. Donatucci,* 81 F.3d 1283, 1288 (3d Cir.1996); *Watters v. City of Philadelphia,* 55 F.3d 886, 892 (3d Cir.1995); *Bradley v. Pittsburgh Bd. of Ed.,* 913 F.2d 1064, 1074–1075 (3d Cir.1990); *Monsanto v. Quinn,* 674 F.2d 990, 999–1000 (3d Cir.1982); *Trotman v. Board of Trustees of Lincoln Univ.,* 635 F.2d 216, 224 (3d Cir. 1980), *cert. denied,* 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981); *see also Alexander v. Polk,* 750 F.2d 250, 264 (3d Cir. 1984); *Behring Int'l. Inc. v. NLRB,* 675 F.2d 83, 88 (3d Cir.1982). If Raniero meets his burden, Defendants are given the opportunity to show by a "preponderance of the evidence" they would have reached the same decision in the absence of the protected conduct. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Pro,* 81 F.3d at 1288; *Watters,* 55 F.3d at 892; *Trotman,* 635 F.2d at 224. Both parties endorse the *Mt. Healthy* analysis. Moving Brief at 18; Opposition Brief at 12.

■ The second part of the *Mt. Healthy* analysis is dispositive in this case. Raniero must show more than that he engaged in protected activity; he must also show his noninvolvement with the ACO was a "substantial" or "motivating" factor in the Board's decision not to promote him. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. Raniero has failed to meet his burden.

Raniero argues "each position for which [he] applied and was fully qualified, was filled by someone involved with the [ACO]." Opposition Brief at 9. Raniero also alleges he was as or more qualified than the persons

selected for promotion and the only reason he was not promoted was because he chose not to be involved with the ACO. Complaint, ¶ 13.

Raniero, however, concedes Thompson's involvement with the ACO started only after she was selected to be an Assistant Principal. Opposition Brief at 10. Raniero, moreover, fails to allege that Michele Frenza Fisk ("Fisk"), who was appointed to one of the CRT positions, had any involvement with the ACO whatsoever.[3] Complaint, ¶ 13(m)–(o).

Raniero's deposition transcript indicates he has no credible evidence to support his claim. He concedes he has no direct evidence Marini made the recommendations based on the candidates' affiliation with the ACO. Raniero Dep. at 157. He conclusorily states, however, that Marini, Highton and even Bruce Walter, the Mayor of Union City, all provide preferential treatment to ACO supporters and discriminate against individuals who refuse to support the ACO. *Id.* at 159–60. He vaguely states his knowledge is derived from his "[e]xperience in being part of Union City for 23 years and hearing and listening to what people say and do." *Id.* at 160. However, he provides no support for such conclusions. Raniero merely states he has "concluded it was lack of involvement with the [ACO] which denied him ... promotion." Opposition Brief at 13. Raniero's opinion he was discriminated against is insufficient to defeat this summary judgment motion. *Hom v. Squire,* 81 F.3d 969, 974 (10th Cir. 1996) (plaintiff's affidavit stating his belief he was discharged because of his exercise of his First Amendment rights was insufficient to establish a causal connection between his "speech" and his subsequent discharge); *Finnegan v. Board of Ed. of Troy,* 30 F.3d 273, 274 (2d Cir.1994) (plaintiff's "conclusory allegations and his own opinion" were insufficient to create a genuine issue to be tried).

Raniero essentially argues the Motion for Summary Judgment should be denied simply because the Defendants and most of the suc-cessful candidates were involved with the ACO. This evidence is insufficient to defeat summary judgment. *See Orsatti v. New Jersey State Police,* 71 F.3d 480, 484–86 (3d Cir.1995); *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1082–1083 (3d Cir.1992); *Stewart v. Rutgers,* 930 F.Supp. 1034, 1047–48 (D.N.J.1996); *see also Matsushita,* 475 U.S. at 575, 106 S.Ct. at 1350 (allowing summary judgment where a predatory pricing conspiracy in violation of the Sherman Act was largely founded on weak circumstantial evidence); *Nereida–Gonzalez,* 990 F.2d at 706 (summary judgment not proper where plaintiff introduced "direct evidence of discriminatory animus" that was buttressed by circumstantial evidence).

■ Even presuming Raniero was able to show his lack of support for the ACO was a substantial or motivating factor behind the decision not to promote him, Defendants would be given the opportunity to prove they "would have reached the same decision ... even in the absence of the protected conduct." *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576.

As the Court observed in *Mt. Healthy:*

A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. *But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision ... on the basis of that record* [.]

429 U.S. at 286, 97 S.Ct. at 575 (emphasis added). The Defendants have submitted ample evidence that Raniero would not have been chosen for promotion even if he were involved with the ACO.

Raniero did not interview for the positions of Assistant Principal or Curriculum Resource Teacher.[4] Raniero Dep. at 18–21. Raniero did not submit letters of recommendation or a resume with his applications. He

---

3. Raniero no longer appears to argue he was discriminated against concerning his application to the position filled by Fisk. Opposition Brief at 9.

4. Raniero alleges Marini assured him that not interviewing would not hurt his chances for promotion. *Id.* Raniero, however, made no attempt to reschedule his interviews prior to receiving this assurance. *Id.* at 20, 27.

did not participate in after-school or summer programs. Kovacs Cert., ¶ 4. As indicated, the successful applicants all interviewed for the positions they received, many included letters of recommendation with their applications and many were active in extracurricular activities.

It is instructive to consider Raniero's proffered evidence under the burden-shifting scheme established by the Supreme Court for claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Although that framework applies to actions brought pursuant to Title VII, *see Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994), and the ADEA, *see O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, —— – ——, 116 S.Ct. 1307, 1309–1310, 134 L.Ed.2d 433 (1996), it is also a useful framework for evaluating Raniero's First Amendment Claim. In *McDonnell Douglas Corp. v. Green,* the Supreme Court held that once a complainant establishes a *prima facie* case, the burden shifts to the employer to articulate some "legitimate nondiscriminatory reason for the employee's rejection." *Waldron v. SL Indus., Inc.,* 56 F.3d 491, 494 (3rd Cir.1995) (citing *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). To overcome the presumption, the employer must clearly set forth, through the introduction of admissible evidence, reasons for its actions that support a finding that unlawful discrimination was not the cause of the employment action. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). Once the employer meets his burden of production, the plaintiff is afforded a fair opportunity to show the employer's stated reason for the employment action is pretext. *Waldron,* 56 F.3d at 494.

Presuming Raniero stated a *prima facie* case of discrimination under Title VII, the Defendants have submitted ample credible evidence that Raniero was not selected for promotion simply because the other candidates were better qualified. As indicated, Defendants have met their burden of proof under the *Mt. Healthy* analysis and would certainly meet their burden of production under the *McDonnell Douglas* burden-shifting scheme.

Raniero has submitted no credible evidence showing the Defendants' stated reasons were pretextual. Raniero merely states the testimony of the Individual Defendants lacks credibility. Opposition Brief at 13, 17. He asserts Marini's consideration of letters of recommendation and the applicants' participation in extracurricular activities was improper because applicants were not informed these factors would be considered. Curiously, Raniero argues Marini's failure to review applicants' personnel files unless he "sensed ... something wrong" and his recommendation of certain candidates over others whom he rated the same or higher on their interviews are suspicious. *Id.* at 14. Finally, Raniero argues the "profess[ed] ignorance" of various Individual Defendants regarding the functioning of the ACO demonstrates their testimony lacks credibility. *Id.* at 16–17.

Although the evidence must be viewed in the light most favorable to Raniero, *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356, the asserted "inconsistency" of Marini's testimony and the lack of knowledge on the part of the Individual Defendants of the ACO's activities, Opposition Brief at 17, do not create a genuine issue of material fact. Raniero provides no support for his assertions Marini acted improperly in considering letters of recommendation and participation in extracurricular activities and that Marini was under an obligation to review the personnel files of the applicants. Marini, moreover, indicated he ranked applicants based on their performance in the interview but recommended them based on their overall application. Marini Dep. at 84. It is not inconsistent, therefore, that some applicants may have been promoted in preference to other applicants who "scored" higher in the interview. *Id.*

Discovery in this case has been extensive. With the exception of Leone, all of the Individual Defendants have been deposed. *See* Opposition Appendix; Kovacs Cert., *passim.* A review of the deposition transcript excerpts reveals no genuine issues of material fact. Raniero essentially presents a dispute

over the qualifications of the candidates for promotion; this is insufficient to defeat this motion for summary judgment. *Stewart,* 930 F.Supp. at 1051–52 (citing *Bennun v. Rutgers,* 941 F.2d 154, 170 (3d Cir.1991), *cert. denied,* 502 U.S. 1066, 112 S.Ct. 956, 117 L.Ed.2d 124 (1992)); *see also Molthan v. Temple Univ.,* 778 F.2d 955, 962 (3d Cir. 1985).

*Conclusion*

For the reasons stated, the Motion for Summary Judgment is granted.