**Robert SCULLY, Plaintiff,**

v.

**BOROUGH OF HAWTHORNE, et al., Defendants.**

**No. Civ.A. 98–1473(AJL).**

United States District Court, D. New Jersey.

June 28, 1999.

David G. Uffelman, Pinto, Rodgers & Uffelman, Morristown, New Jersey, for plaintiff.

Douglas C. Borchard, Hawthorne, New Jersey, Thomas B. Hanrahan, Hanrahan & Robertelli, Heritage Office Center, Oradell, New Jersey, for defendants.

## OPINION

LECHNER, District Judge.

This was an action brought by the plaintiff, Robert Scully ("Scully"), against defendants, the Borough of Hawthorne, the Council for the Borough of Hawthorne (the "Borough Council"), Fred Criscitelli, David A. Noble, Lois Cuccinello, John G. Lane, Joseph Metzler, Marge Shortway, Patrick Botbyl, Brian Carmen and Joseph Walilko (collectively, the "Defendants").[1] Scully

---

1. Fred Criscitelli, David A. Noble, and John G. Lane shall be referred to herein as the

sought to recover damages for an alleged wrongful demotion pursuant to 42 U.S.C. § 1983 ("Section 1983") and various provisions of the laws of the State of New Jersey. The instant matter was tried to a jury, and Scully was awarded $89,500 in compensatory and punitive damages. Scully was also reinstated to his prior position.

Currently pending is the motion of the Defendants for judgment as a matter of law (the "Motion for Judgment as a Matter of Law") pursuant to Rule 50(b) of the Federal Rules of Civil Procedure ("Rule 50(b)").[2] For the reasons set forth below, the Motion for Judgment as a Matter of Law is granted in part and denied in part.

*Facts*

A. *Parties*

Scully is a resident of Hawthorne, New Jersey and an employee in its police department (the "Borough Police Department"). Scully alleges he was wrongfully demoted from the rank of Lieutenant as a result of the actions of the Defendants.

The Borough of Hawthorne is a political subdivision of the State of New Jersey. At all relevant times, the Borough of Hawthorne was the employer of Scully.

The Borough Council is the governing legislative body of the Borough of Hawthorne. The Borough Council is comprised of elected officials.

Fred Criscitelli became the mayor of the Borough of Hawthorne ("Mayor Criscitelli") in January of 1998 as a result of an election held in November of 1997. Before his election as mayor, Mayor Criscitelli was an elected member of the Borough Council.

Lois Cuccinello ("Councilwoman Cuccinello"), John Lane ("Councilman Lane"), Joseph Metzler ("Councilman Metzler"), Marge Shortway ("Councilwoman Shortway") and Patrick Botbyl ("Councilman Botbyl") were elected members of the Borough Council.

David A. Noble ("Chief Noble") was the Chief of Police for the Borough of Hawthorne. Brian Carmen ("Officer Carmen") and Joseph Walilko ("Officer Walilko") were employed as officers by the Borough Police Department.

B. *Procedural History*

Scully filed the initial complaint in this matter on 30 March 1998. Scully filed an amended complaint (the "Amended Complaint") on 16 June 1998. Defendants filed an answer to the Amended Complaint (the "Answer") on 13 July 1998.

On 24 July 1998, a scheduling conference was attended by counsel for all parties to this action. Pursuant to an order, dated 24 July 1998, the parties were directed to submit agreed-upon jury charges and an agreed-upon verdict sheet by 2 November 1998 (the "Agreed Jury

"Individual Defendants."

2. In support of the Motion for Judgment as a Matter of Law, Defendants Submitted:
 1) Brief by Defendants Fred Criscitelli, John Lane and David A. Noble in Support of Motion for Judgment After Trial Pursuant to Fed.R.Civ.P. 50(b) (the "Individual Defendants Moving Brief");
 2) Memorandum of Defendants Borough of Hawthorne and Borough Council in Support of Motion for Judgement as a Matter of Law under Rule 50 (the "Borough Defendants Moving Brief");
 3) Reply Brief by Defendants Fred Criscitelli, John Lane and David A. Noble in Support of Motion for Judgment After Trial Pursuant to Fed.R.Civ.P. 50(b) (the

"Individual Defendants Reply Brief"); and
 4) Reply Memorandum of Defendants Borough of Hawthorne and Borough Council in Support of Motion for Judgement as a Matter of Law under Rule 50 (the "Borough Defendants Reply Brief").
 In opposition to the Motion for Judgment as a Matter of Law, Plaintiffs submitted:
 1) Memorandum in Opposition to the Defendants' Motion for Judgment as a Matter of Law (the "Opposition Brief"); and
 2) Plaintiff's Reply Memorandum in Opposition to the Defendants' Motion for Judgment as a Matter of Law (the "Reply Brief").

Charges," the "Agreed Verdict Sheet"). The Agreed Jury Charges and the Agreed Verdict Sheet were submitted on 9 November 1998.[3]

Pursuant to a stipulation between the parties, dated 9 November 1998, (the "9 November 1998 Stipulation of Dismissal") the following counts, or portions of these counts, were dismissed with prejudice and without costs to any party:

(1) Count One of the Amended Complaint was dismissed as to Councilwoman Cuccinello, Councilman Metzler and Councilman Botbyl;

(2) Count Two of the Amended Complaint was dismissed as to Officer Carmen, Officer Walilko and John Does 1–30;

(3) Count Three of the Amended Complaint was dismissed in its entirety;[4]

(4) Count Four of the Amended Complaint was dismissed as to Councilwoman Cuccinello, Councilman Metzler and Councilman Botbyl;

(5) Count Five of the Amended Complaint was dismissed in its entirety;[5]

(6) Count Six of the Amended Complaint was dismissed as to Councilwoman Cuccinello, Councilman Metzler, Councilman Botbyl, Officer Carmen, Officer Walilko and John Does 1–39; and

(7) Count Ten of the Amended Complaint was dismissed in its entirety.[6]

*See* 9 November 1998 Stipulation of Dismissal.

Pursuant to a stipulation and order, dated 16 March 1999, Count Nine of the Amended Complaint, alleging violations of public policy, was dismissed as to Councilwoman Cuccinello and Councilman Metzler.

The trial of this matter, before a jury, commenced on 16 March 1999. This matter was tried from 16 March 1999 through 23 March 1999.

On 19 March 1999, Defendants filed a motion to amend the Answer (the "19 March 1999 Motion to Amend Answer"). The 19 March 1999 Motion to Amend Answer was denied. Also on 19 March 1999, upon completion of Scully's case in chief, Defendants moved for judgment as a matter of law (the "19 March 1999 Motion for Judgment as a Matter of Law") pursuant to Rule 50(a) of the Federal Rules of Civil Procedure ("Rule 50(a)").

In Response to the 19 March 1999 Motion for Judgment as a Matter of Law, Scully consented to the dismissal of this matter as to Councilwoman Shortway. Accordingly, Councilwoman Shortway was dismissed as a Defendant. The 19 March 1999 Motion for Judgment as a Matter of Law was denied as to the remaining Defendants.

Defendants completed their case on 19 March 1999. The jury was charged on 22 March 1999 and began deliberations on that date. The Jury returned a verdict in

---

**3.** By agreeing to the jury charges and the questions contained in the verdict sheet, the parties agreed the substantive law for the trial of this case had been sufficiently set forth. Further, the parties agreed, by their submissions, this case would be tried in accordance with the Agreed Jury Charges and Agreed Verdict Sheet. The parties were thus entitled to, and apparently did, prepare for and try their respective cases as limited by, and in reliance upon, the Agreed Jury Charges and Agreed Verdict Sheet.

**4.** Count Three of the Amended Complaint alleged the actions of Chief Noble, Officer Carmen and Officer Walilko were defamatory and sought recovery pursuant to the common law claim for defamation. *See* Amended Complaint Count Three.

**5.** Count Five of the Amended Complaint alleged violations of N.J.Stat.Ann. § 40A:14–143, which provides that the police department of a municipality may demote members of its force for reasons of economy. *See* Amended Complaint Count Five.

**6.** Count Ten of the Amended Complaint alleged Chief Noble and Officers Carmen and Walilko unreasonably placed Scully in a false light before his peers, the public and his family. *See* Amended Complaint Count Ten.

favor of Scully on 23 March 1999. Following the verdict, Scully moved for reinstatement to the rank of lieutenant; this motion was granted.

### C. *Background*

#### 1. *Evidence Presented at Trial*

Scully had been a member of the Borough Police Department for approximately twenty years. Scully began his employment with the Borough Police Department as a patrolman, and was promoted to the rank of Sergeant in November of 1993.

During the fall of 1997, there was a campaign and election for mayor of the Borough of Hawthorne (the "November 1997 Election"). Scully openly supported the incumbent mayoral candidate, Paul Engelhardt ("Former Mayor Engelhardt"). Scully demonstrated his support for Former Mayor Engelhardt by placing a campaign sign on the lawn of his home and by contributing money.

During the 1997 election campaign, Mayor Criscitelli, Councilwoman Shortway and Councilman Lane were all members of the Borough Council and were politically aligned in opposition to Former Mayor Engelhardt. The campaign for the November 1997 Election was apparently contentious, particularly in light of litigation by Mayor Criscitelli against Former Mayor Engelhardt to compel disclosure of Former Mayor Engelhardt's campaign contributors.

Mayor Criscitelli, Councilwoman Shortway and Councilman Lane formed a group called the "A Team," so named because their party was listed on the A-line on the ballot. The "A Team" distributed a campaign flyer that listed the names of individuals who were alleged to have a financial interest in the campaign of Former Mayor Engelhardt. Scully was listed among the names of those having a financial interest in the campaign of Former Mayor Engel-

hardt. In addition, the campaign flyer distributed by the "A Team" suggested Scully might have a promotion "in the works" on account of his contributions to the campaign of Former Mayor Engelhardt.

On 5 November 1997, the day after the November 1997 Election, Scully was approached by Lieutenant Kenyon, his superior officer. Lieutenant Kenyon stated he had attended the victory party for Mayor Criscitelli and "[Mayor Criscitelli] told me he's coming after you the first of the year and you might be a lieutenant, but you're going to be walking McFarlan Avenue." [7]

Shortly after the "A Team" distributed its campaign flyer to the residents of the Borough of Hawthorne, postings of anonymous caricatures, cartoons and other material disparaging of Scully and Former Mayor Engelhardt began to be posted in the locker room of the Borough Police Department. This material was posted on lockers, walls, and the PBA bulletin board.

The postings depicted Former Mayor Engelhardt as a Nazi. In addition, the postings portrayed Scully as a puppet of Former Mayor Engelhardt, disparaged his intelligence and qualifications, and suggested his career was "going down the toilet" on account of his support for Former Mayor Engelhardt.

Scully testified he complained to Chief Noble concerning the postings on two or three occasions. Chief Noble, while denying Scully had complained to him concerning the postings, testified that he allowed such postings to continue because they provided a source of levity.

Mayor Criscitelli, a councilman at the time of the November 1997 Election, defeated Former Mayor Engelhardt. Mayor Criscitelli took the oath of office on 1 January 1998.

Before the November 1997 Election, in approximately late October 1997, Scully

---

**7.** McFarlan Avenue is apparently an undesirable walking assignment because it requires the officer to traverse a very steep hill.

was informed by Chief Noble that he would be promoted to the rank of Lieutenant. On 11 November 1997, approximately one week after the November 1997 Election, Scully was promoted to the rank of Lieutenant by Former Mayor Engelhardt. In a ceremony attended by his family and the highest ranking police officer on duty, Scully took the oath of office for a police Lieutenant; the oath was given by Former Mayor Engelhardt.

Following the promotion ceremony, Scully reported for work wearing the uniform of a police Lieutenant. Scully was congratulated on his promotion by Chief Noble. Chief Noble also gave Scully the breast and hat shields of a police Lieutenant.

Although Scully reported to work as a Lieutenant during the period commencing on 11 November 1997 and ending on 29 December 1997, Scully was not paid the increased salary of a police Lieutenant.

On 17 December 1997, the Borough Council was presented with a budget resolution that, in addition to other funding issues, concerned the provision of monies to fund the promotion of Scully to Lieutenant. Although there was testimony that there were funds available to pay for the promotion of Scully, the Borough Council, on 17 December 1997, decided to deny funding for the promotion of Scully.

After consulting with the attorney for the Borough of Hawthorne and the Borough Administrator, Chief Noble required Scully to return to the rank of Sergeant on 29 December 1997. There was no testimony that Scully had committed any misconduct or had not properly performed as a Lieutenant. At no time prior to Scully's demotion did the Borough of Hawthorne conduct a hearing with regard to whether Scully should be demoted, nor was there a finding of "just cause," as that term is defined by N.J.Stat.Ann. § 40A:14–147 ("Section 40A:14–147," or the "Police Tenure Law").

Following his demotion, Scully filed a grievance with his superiors. This grievance was denied by Chief Noble. The grievance was also denied by Mayor Criscitelli. Scully subsequently filed the same grievance with the Borough Council. On 4 March 1998, the Borough Council adopted a resolution refusing to participate in the grievance procedure.

### 2. Claims Submitted to the Jury and the Jury Verdict

Count One of the Amended Complaint alleged Scully was deprived of his property right in the position of Lieutenant. See Amended Complaint ¶ 54. Count One of the Amended Complaint sought recovery from the Borough of Hawthorne, the Borough Council, Mayor Criscitelli, Councilman Lane and Chief Noble.

Count One of the Amended Complaint also alleged Scully was demoted from the position of Lieutenant as a direct result of the support he gave to Former Mayor Engelhardt in the 1997 Election. Scully asserted this violated his First Amendment rights to freedom of speech and expression. Count Two of the Amended Complaint alleged Chief Noble deprived Scully of his rights to freedom of speech and expression by punishing him for his political activities.

Count Four of the Amended Complaint alleged that the Borough of Hawthorne demoted Scully from the rank of Lieutenant to Sergeant without cause and in violation of Section 40A:14–147. Section 40A:14–147 provides that police officers are not to be "removed, fined, or reduced in rank from or in office, employment, or position therein, except for just cause." Section 40A:14–147. Just cause is defined as "incapacity, misconduct, or disobedience." Id..

Count Six of the Amended Complaint alleged the Borough of Hawthorne demoted Scully in violation of Article 1, paragraph 1 of the Constitution of the State of New Jersey.

Count Seven of the Amended Complaint alleged there was a contract created between Scully and the Borough of Hawthorne when Scully was offered the position of Lieutenant and accepted by taking the oath of office and performing the duties of a Lieutenant. Count Seven further alleged the Borough of Hawthorne breached its employment contract with Scully when it demoted him from the rank of Lieutenant to the rank of Sergeant.

Count Nine of the Amended Complaint alleged New Jersey has a public policy honoring the right to participate in political action. Count Nine asserted the Borough of Hawthorne subjected Scully to "an adverse employment action in violation of the clear public policy of the State of New Jersey." Amended Complaint ¶ 105.

The Jury returned its verdict on the Agreed Verdict Sheet as follows. In response to the question of whether the Defendants had deprived Scully of his constitutional property rights in the position of Lieutenant on account of his political activities, the Jury found Mayor Criscitelli and the Borough Council liable.[8] The Jury awarded damages in the amount of $18,000.

In response to the question of whether Defendants deprived Scully of his civil rights of free speech and association, the Jury found Mayor Criscitelli, the Borough Council and Chief Noble were liable.[9] The Jury awarded damages in the amount of $3,000.

The various state law claims raised by Scully were submitted to the Jury in a single, multi-part question on the Agreed

Verdict Sheet. The Jury determined the Borough of Hawthorne was liable for violating Section 40A:14–147, for breach of contract, for violating the Constitution of the State of New Jersey and for violating a mandate of public policy. The Jury awarded Scully damages in the amount of $8,000 for these violations.

The issue of punitive damages was presented to the Jury on the Agreed Verdict Sheet as to those Defendants found liable, pursuant to Section 1983, for depriving Scully of his property rights in the position of the Lieutenant and for depriving Scully of his rights to freedom of speech and expression. The Jury found that Scully had proven, by a preponderance of the evidence, that Mayor Criscitelli and the Borough Council had acted maliciously. The Jury determined Scully was entitled to recover $30,000 in punitive damages from Mayor Criscitelli and $30,500 in punitive damages from the Borough Council.

As noted, the substantive law pertaining to the claims submitted to the Jury was set forth in the Agreed Jury Charges. The Jury was instructed as the parties requested in the Agreed Jury Charges; there was no relevant objection to the jury charges, as given to the Jury.[10]

*Discussion*

A. *Standard of Review Pursuant to Rule 50*

Defendants move pursuant to Rule 50(b) to:

    (1) allow the verdict to stand as to the Borough of Hawthorne, as per the

---

**8.** The Jury determined the Borough of Hawthorne, Councilman Lane and Chief Noble were not liable for depriving Scully of his property rights on account of his political activities.

**9.** The Jury determined the Borough of Hawthorne and Councilman Lane were not liable for the deprivation of the civil rights of free speech and association of Scully.

**10.** The only objection raised as to the Agreed Jury Charges concerned charging the jury as

to the possibility of awarding damages for the reasonable value of future wages and benefits. *See* Tr. at p. 669, l. 9 to p. 670, l. 16. Defendants argued Scully had not presented evidence to allow for an award of damages based upon future wages and benefits. *See id.* Scully conceded this point and the jury was instructed there was no claim for future damages in the instant case. *See* Tr. at p. 670, l. 18 to p. 671, l. 4. No objection related to any issue raised by the Motion for Judgment as a Matter of Law was made by the parties.

findings of the Jury in Question Numbers 1 and 3 of the Agreed Verdict Sheet;

(2) allow the verdict to stand, in its entirety, as to Councilman Lane;

(3) enter judgment as a matter of law in favor of the Individual Defendants and the Borough Council; and

(4) enter judgment as a matter of law in favor of the Borough of Hawthorne, as to those claims encompassed by Question Numbers 5 and 6 of the Agreed Verdict Sheet.

*See* Individual Defendants Moving Brief; Borough Defendants Moving Brief.

Rule 50(b) provides, in relevant part:

If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

(1) if a verdict was returned:

(A) allow the judgment to stand,

(B) order a new trial, or

(C) direct entry of judgment as a matter of law; or

(2) if no verdict was returned;

(A) order a new trial, or

(B) direct entry of judgment as a matter of law.

Rule 50(b).

■ When presented with a motion for judgment as a matter of law following a jury verdict, a "[D]istrict [C]ourt must view the evidence in the light most favorable to the non-moving party, and determine whether the record contains the 'min-imum quantum of evidence from which a jury might reasonably afford relief.'" *Mosley v. Wilson,* 102 F.3d 85, 89 (3d Cir.1996) (quoting *Parkway Garage, Inc. v. City of Philadelphia,* 5 F.3d 685, 691 (3d Cir.1993) (quotation omitted)); *see also Coleman v. Kaye,* 87 F.3d 1491, 1497 (3d Cir.1996). A jury verdict should be overturned "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Fultz v. Dunn,* 165 F.3d 215, 218 (3d Cir.1998); *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* 140 F.3d 494, 510 (3d Cir.1998) (citing *Stelwagon Mfg. Co. v. Tarmac Roofing,* 63 F.3d 1267, 1270–71 (3d Cir.1995) ("[F]actual findings [of a jury] are reviewed to determine whether the evidence and justifiable inferences most favorable to the prevailing party afford any rational basis for the verdict.")); *Delli Santi v. CNA Ins. Cos.,* 88 F.3d 192, (3d Cir.1996) (The role of the court is to determine " 'whether the evidence and justifiable inferences most favorable to the non-moving party afford any rational basis for the verdict.'") (quoting *Anastasio v. Schering Corp.,* 838 F.2d 701, 705 (3d Cir.1988) (citing *Bhaya v. Westinghouse Electric Corp.,* 832 F.2d 258, 259 (3d Cir.1987); *Blum v. Witco Chem. Corp.,* 829 F.2d 367, 372 (3d Cir.1987))).

■ Generally, a renewed motion for judgment as a matter of law that is made after trial "must be made on grounds that were previously asserted in a motion for directed verdict prior to the submission of the case to the jury." *Mosley,* 102 F.3d at 90; *see also* Rule 50(b) Advisory Committee's Note; *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1077 (3d Cir.1991). Scully argues that although Defendants in the instant case made a motion for judgment as a matter of law at the close of Scully's case, Defendants failed to renew their motion prior to submission of the case to the jury.[11] Scully asserts this fail-

---

11. In the instant matter, Defendants did not renew their motion for judgment as a matter

ure waives the right of Defendants to challenge a jury verdict pursuant to Rule 50(b).

"It is a firmly entrenched rule that a court may grant a motion for judgment notwithstanding the verdict only when the moving party formally renewed its motion for a directed verdict at the close of all the evidence." *Mallick v. Int'l Bhd. Elec. Workers,* 644 F.2d 228, 233 (3d Cir.1981) (citing *Lowenstein v. Pepsi–Cola Bottling Co. of Pennsauken,* 536 F.2d 9(1976)).

The Third Circuit, in *Mallick,* stated:

> This Rule is commanded not only by the language of [Rule 50(b)], but also by the policy of the Seventh Amendment's guarantee of a jury trial. Unless a court has been alerted to deficiencies in proof by a motion for a directed verdict, a request that the court enter a judgment contrary to that of the jury is tantamount to asking the court to reexamine the facts as found by the jury. Such a re-examination would abridge the Seventh Amendment.

*Mallick,* 644 F.2d at 233. Accordingly, it appears the renewal of a motion for judgment as a matter of law at the close of all the evidence remains a "predicate," "prerequisite" or "condition precedent" to a motion under Rule 50(b). *See Lowenstein,* 536 F.2d at 10–11.

In the instant case, the Defendants moved for judgment as a matter of law at the conclusion of Scully's case. *See* Tr. p. 487, l. 17 to p. 497, l. 19. This motion was denied without prejudice. *See id.* at p. 497, l. 15–19. The motion for judgment as a matter of law was renewed by defendants after the conclusion of the case, but while the jury had begun deliberations. *See id.* p. 689, l. 20 to p. 706, l. 24). Decision on the renewed motion for judgment as a matter of law was reserved, and the parties were directed to order the trial transcript and submit briefs, referencing

of law until 23 March 1999, after the jury had been charged and had begun deliberations.

the transcript, in support of their positions relevant to the Motion for Judgment as a Matter of Law. *See id.* at p. 704, ll. 4–10. The Defendants submitted the pending Motion for Judgment as a Matter of Law, pursuant to Rule 50(b), after the jury returned its verdict.

Scully argues that although Defendants made a motion for judgment as a matter of law at the close of his case, Defendants failed to timely renew their motion before the instant case was submitted to the Jury. *See* Opposition Brief at 5. Scully further argues this failure constitutes a waiver of the right to challenge the jury verdict pursuant to Rule 50(b). *See id.* at 5–7 (citing *Mallick,* 644 F.2d at 234; *Lowenstein,* 536 F.2d at 11 ("[J]udicial power exists under Rule 50(b) to grant judgment notwithstanding the verdict only when a motion for a directed verdict has been made at the conclusion of all of the evidence.")).

Defendants, however, argue there is no procedural bar to the pending Motion for Judgment as a Matter of Law. *See* Individual Defendants' Reply Brief at 1–6. Defendants assert that the requirement of renewing a motion for judgment as a matter law at the close of all the evidence, and before a case is submitted to the jury, may be relaxed in certain situations. *See id.* at 4 (citing *Associated Bus. Tel. Sys. v. Greater Capital,* 729 F.Supp. 1488 (D.N.J.), *aff'd,* 919 F.2d 133 (3d Cir.1990)).

In *Associated Business Telephone* the court determined that the failure to file a motion for judgment as a matter of law at the close of all of the evidence, as required by Rule 50(b), could be excused if:

> (a) there has been substantial, if not literal compliance with the rule;

> (b) where manifest injustice will otherwise occur since the judgment is totally without legal support;

*See* Tr. at p. 687, ll. 10–12.

(c) where the trial judge in effect excused the failure to renew the motion; and

(d) where the additional evidence was brief and inconsequential.

*Associated Bus. Tel.*, 729 F.Supp. at 1502 (citing *Skill v. Martinez*, 91 F.R.D. 498, 515 n. 14 (D.N.J.1981), *aff'd* 677 F.2d 368 (3d Cir.1982)).

█ In the instant matter, it is appropriate to excuse the failure of the Defendants to move for judgment as a matter of law at the close of all of the evidence, and before submission of the case to the Jury. In addressing the 19 March 1999 Motion for Judgment as a Matter of Law made at the close of Scully's case, it was stated:

I'm going to deny without prejudice the Rule 50 motion here. If it's appropriate at the end of the case and you feel it's necessary, you have leave to file another motion at the end of the case if the jury comes back against you, but I'm going to deny it without prejudice at this point.

Tr. p. 497, ll. 14–19. Accordingly, it was specifically contemplated that a renewed motion for judgment as a matter of law would not be made until after the Jury returned its verdict. The failure of the Defendants to move at the close of all the evidence is excused. *See Associated Bus. Tel.*, 729 F.Supp. at 1502. All arguments raised in connection with the Motion for Judgement as a Matter of Law will be considered.

B. *Was There Support for the Finding Scully Held the Position of Lieutenant in the Borough of Hawthorne*

The Jury determined Scully had proven, by a preponderance of the evidence, that he had held the position of police Lieutenant with the Borough of Hawthorne. Defendants, however, argue that the promotion of Scully by Former Mayor Engelhardt violated the Local Budget Law, N.J.Stat.Ann. 40A:4–57 (the "Local Budget Law"). *See* Individual Defendants Moving Brief at 26–12; Borough Defendants Moving Brief at 2–4. The Local Budget law provides, in relevant part:

No officer, board, body or commission shall, during any fiscal year, expend any money (except to pay notes, bonds, or interest thereon), incur any liability, or enter into any contract which by its terms involves the expenditure of money for any purpose for which no appropriation is provided, or in excess of the amount appropriated for such purpose.

Any contract made in violation hereof shall be null and void, and no moneys shall be paid thereon.

N.J.Stat.Ann. 40A:4–57.

In *Home Owners Construction Co. v. Glen Rock*, 34 N.J. 305, 169 A.2d 129 (1961), the New Jersey Supreme Court rejected a mechanical, inflexible approach to the Local Budget Law, allowing incidental additions to the budgeted terms of a pre-existing construction contract. The *Home Owners Construction* court noted that the original contract with the builder had been preceded by proper bidding. *Id.* at 315, 169 A.2d 129. It was held that the statute should be interpreted to further, not defeat, the legislative goal of sound fiscal policy. *Id.* "Where the resulting additional expenditures are reasonable and are conscientiously viewed as being in fulfillment of the original undertaking rather than as departing therefrom ... it would be contrary to the public interest to halt the undertaking and call for bidding." *Id.*

█ In the instant case, there was sufficient evidence presented to allow the Jury to conclude that the promotion of Scully was not voided by operation of the Local Budget Law. On 11 November 1997, Former Mayor Engelhardt appointed Scully to the position of Lieutenant in the Borough Police Department. *See* Tr. p. 343, ll. 15–20, p. 344, ll. 16–22 (Former Mayor Engelhardt); Trial Exh. 42. In the courtroom of the municipal building, Former Mayor Engelhardt administered the oath of office to Scully in the presence of several witnesses, including Scully's family and

police captain John Shannon, the highest ranking police officer on duty. *See* Tr. p. 62, l. 19 to p. 64, l. 6 (Scully); *id.* p. 344, ll.16–25 (Former Mayor Engelhardt).

Scully signed the oath, and the papers were filed with the municipal clerk. *See* Tr. p. 64, ll. 7–11. Scully's promotion filled a vacancy in departmental staffing for the position of police Lieutenant. *See id.* p. 100, l. 16 to p. 101, l. 2 (Scully); *id.* p. 267, l. 22 to p. 268, l. 1 (Chief Noble); *id.* p. 346, l. 25 to p. 347, l. 6 (Former Mayor Engelhardt).

From the testimony presented at trial, the Jury could reasonably have concluded Scully was qualified for the position of police lieutenant. *See* Tr. t 373:1–4 (Former Mayor Engelhardt); *id.* p. 297, ll. 13–15 (Chief Noble). The day after taking the Lieutenant's oath, Scully reported to work wearing a lieutenant's uniform, complete except for the lieutenant's shields. *See* Tr. p. 64, l. 25 to p. 65, l. 19 (Scully). Chief Noble congratulated Scully on his promotion and gave Scully the hat shield and breast shield of a police lieutenant. *See id.* p. 66, ll. 2–21 (Scully).

While on duty during the period from 12 November 1997 through 29 December 1997, Scully assumed and performed the duties of a police lieutenant, taking the appropriate new position in the chain of command. *See* Tr. p. 67, l. 24 to p. 68, l. 12 (Scully); *id.* p. 69, ll. 4–17 (Scully); *id.* p. 276, l. 18 to p. 278, l. 13 (Chief Noble); Trial Exh. 73 (overtime slip dated 15 December 1999, signed by Chief Noble and reflecting Scully's rank as Lieutenant).

In addition, there was a collective bargaining agreement entered into by the Borough of Hawthorne and the Policemen's Benevolent Association of Hawthorne, New Jersey Local No. 200 (the "Hawthorne–Local 200 CBA"). *See* Exh. 72. The Hawthorne–Local 200 CBA expressly provided: "In the event of promotion during the year, the salary shall be adjusted proportionately for the remainder of the year." Exh. 72, Art. III (Unit B–Superior Police Officers), p. 3.

The Hawthorne–Local 200 CBA also expressly provided for tenure protection for police officers. *See id.* The Hawthorne–Local 200 CBA stated management "rights, authority, duties and responsibilities" are bounded by the authority granted under "the Laws and Constitution of the State of New Jersey, and of the United States." *Id.*, p. 3, ¶ A; *id.* pp. 3–4, ¶ B (referring to responsibilities under R.S. 40A). Thus, in accordance with the terms of the Hawthorne–Local 200 CBA, the Jury could have reasonably concluded the Hawthorne–Local 200 CBA incorporated the provisions of the Police Tenure Law as well as the Local Budget Law, which required an adequate appropriation. *See, e.g., Home Owners Construction,* 34 N.J. at 315, 169 A.2d 129 (incidental expenditures in furtherance of an original undertaking are not invalidated by operation of the Local Budget Law).

The Police Tenure Law provides that no police officer can be "suspended, removed, fined or reduced in rank ... except for just cause." Section 40A: 14–147. There was no evidence presented from which it could be concluded Scully was demoted for good cause. In addition, the promotion of Scully to Lieutenant filled a then existing vacancy in the Borough Police Department. Accordingly, the facts presented at trial, together with all reasonable inferences drawn from them, support the finding of the Jury that Scully had been promoted to the position of Lieutenant.

Further, the evidence presented at trial supports the conclusion of the Jury that the promotion of Scully was not voided by operation of the Local Budget Law. The conclusion the Local Budget Law was inapplicable to the facts of the instant case, which is inherent in the determination of the Jury that Scully was promoted, is supported by the evidence and all justifiable inferences that may be drawn in favor of Scully. *See, e.g.,* Exh. 24 (memorandum from Borough Treasurer to Councilmen Criscitelli and Lane, noting money suffi-

cient to cover the promotion of Scully had been included in the amount needed to sufficiently fund the Borough Police Department Salary Account); Tr. p. 172, ll. 21–23 and p. 178, ll. 5–7 (testimony of Councilman Botbyl, stating $500 was all that was needed to fund the promotion of Scully for the year, and observing that the salary and wage line for the Borough Police Department contained unencumbered funds exceeding $132,000); *id.* p. 100, l. 16 to p. 101, l. 2 (Scully—Scully's promotion filled a vacancy in departmental staffing for the position of Lieutenant); *id.* p. 267, l. 22 to p. 268, l. 1 (Chief Noble—same); *id.* p. 346, l. 25 to p. 347, l. 6 (Former Mayor Engelhardt—same). Accordingly, the evidence, with all reasonable inferences drawn in favor of Scully, would allow a reasonable jury to conclude Scully was promoted. Further, the evidence supports the conclusion that such promotion was either incidental to the Hawthorne–Local 200 CBA, and therefore outside the operation of the Local Budget Law, or filled a then existing position for police Lieutenant for which an appropriation had previously been made.

## C. *Section 1983 Claims*

### 1. *Elements of a Section 1983 Claim*

Section 1983 of Title 42 ("Section 1983") [12] provides a cause of action against a person "who, under the color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The purpose of Section 1983 is

"to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (citing *Carey v. Piphus,* 435 U.S. 247, 254–57, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)); *see also Blanche Road Corp. v. Bensalem Township,* 57 F.3d 253, 265 (3d Cir.); *Bolden v. Southeastern Pennsylvania Transp. Auth.,* 21 F.3d 29, 34 (3d Cir.1994).

■ To succeed on a claim brought pursuant to Section 1983, a plaintiff must prove the violation of a right secured by the Constitution or laws of the United States and that the conduct complained of was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 330–331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

### 2. *Claims of Immunity*

#### a. *Legislative Immunity for Mayor Criscitelli*

At the time of the demotion of Scully, Mayor Criscitelli was serving as a member of the Borough Council, and had not yet taken office as mayor of the Borough of Hawthorne. The actions taken by Mayor Criscitelli, in relation to the claims raised by Scully, all took place during Mayor Criscitelli's tenure as a councilman.[13]

---

**12.** Section 1983 states, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

**13.** The only allegations against Mayor Criscitelli, concerning actions taken while he held the position of Mayor, related to the procedural due process claim raised by Scully. As set forth below, Scully, by submission of the Agreed Jury Charges, has abandoned his claim for damages based upon the denial of his Fourteenth Amendment right to procedural due process. Accordingly, actions taken by Mayor Criscitelli during his tenure as mayor are not relevant to a decision on the Motion for Judgment as a Matter of Law.

■ Municipal legislators enjoy an absolute immunity against claims brought pursuant to Section 1983 where such claims arise from actions taken in their legislative capacity. *See Bogan v. Scott–Harris*, 523 U.S. 44, 53–54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) (making explicit the entitlement of local legislators to absolute immunity for their legislative acts); *see also Tenney v. Brandhove*, 341 U.S. 367, 372, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (state legislators absolutely immune from suit); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (regional legislators entitled to absolute immunity).[14]

At the time Section 1983 was enacted, local legislators were entitled to absolute immunity from suit pursuant to the common law. *See Bogan*, 523 U.S. at 49, 118 S.Ct. 966; *see also T & M Homes, Inc. v. Township of Mansfield*, 162 N.J.Super. 497, 512, 393 A.2d 613 (Law Div.1978).

> Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability. Furthermore, the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains common place. And the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability.

*Bogan*, 523 U.S. at 52, 118 S.Ct. 966 (citations omitted).

The *Bogan* Court addressed an issue analogous to the issue presented in the instant case. The plaintiff in *Bogan* alleged, *inter alia*, that the elimination of her position by city officials was motivated by a desire to retaliate against her for the exercise of her First Amendment rights. *See Bogan*, 523 U.S. at 47, 118 S.Ct. 966. A jury returned a verdict in favor of the plaintiff. It found the city and the vice president of the city council were liable for violating the plaintiff's constitutionally protected right to free speech. *See id.* The Court determined that the council vice president's act of voting in favor of an ordinance that eliminated the plaintiff's position was "quintessentially legislative." *See id.* at 55, 118 S.Ct. 966. Accordingly, the council vice president was found to be absolutely immune from a suit brought pursuant to Section 1983. *See id.* at 55–56, 118 S.Ct. 966.

Scully argues that the Defendants' conduct in demoting him was not legislative. *See* Opposition Brief at 34. Scully asserts the actions of the Defendants' were managerial and not legislative. *See id.* In making this argument, Scully improperly characterizes the action taken by the members of the Borough Council. The Borough Council did not demote Scully. Rather, the Borough Council voted on an appropriations resolution and refused to fund the promotion of Scully.

The *Bogan* Court characterized absolute legislative immunity as encompassing "all actions taken in the sphere of legitimate legislative activity." *Id.* at 54, 118 S.Ct. 966. "Whether an act is legislative turns

---

**14.** The immunity from suit that attaches to local and state legislators under Section 1983 is not enjoyed by municipalities or legislative bodies. *See Alden v. Maine*, —— U.S. ——, 119 S.Ct. 2240, 2266, —— L.Ed.2d —— (1999) (noting an important limit on the principle of sovereign immunity is that it does not extend to suits brought against municipal corporations or other governmental entities that are not "an arm of the State"); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Accordingly, even absent the ability to recover directly from a local legislator, a plaintiff may, upon proper proof, recover for the deprivation of constitutional rights resulting from an official policy of a municipality or enactment of a legislative body. *See Monell*, 436 U.S. at 691, 98 S.Ct. 2018.

on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* The act of passing an ordinance that eliminated the plaintiff's position "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *See id.* at 55–56, 118 S.Ct. 966.

▮ As in *Bogan,* the instant case presents a situation in which the Borough Council addressed a resolution that concerned budgetary matters; these concerns implicate the discretionary, policymaking processes traditionally assigned to legislators. *See id.* at 56, 118 S.Ct. 966. Mayor Criscitelli voted, in his capacity as a councilman, not to fund the promotion of Scully. This action fell within the discretionary, budgetary functions traditionally assigned to legislators. Accordingly, Mayor Criscitelli is entitled to absolute legislative immunity for the actions he took as a member of the Borough Council. Because Mayor Criscitelli is immune from suit, he is entitled to judgment as a matter of law in his favor on those counts alleging violations of Section 1983.

b. *Qualified Immunity For Chief Noble*

Chief Noble argues he is entitled to qualified immunity from the Section 1983 claims raised by Scully. *See* Individual Defendants Moving Brief at 33–36. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have been known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Ryan v. Burlington County,* 674 F.Supp. 464, 479 (D.N.J.1987), *aff'd,* 860 F.2d 1199 (3d Cir.1988).

When addressing whether a public official is entitled to qualified immunity, this Circuit requires inquiry first be made into whether the plaintiff has established a claim for a constitutional violation. *See*

*Assaf v. Fields,* 178 F.3d 170, 173 (3d Cir.1999) (citing *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)); *Malignaggi v. County of Gloucester,* 855 F.Supp. 74, 79 (D.N.J.1994). Only after the alleged constitutional violation has been established should the question of qualified immunity be addressed. *See Assaf,* 178 F.3d at 173.

As explained below, Scully has failed to present evidence from which a jury could reasonably conclude Chief Noble violated his constitutional rights. Accordingly, the issue of qualified immunity need not be addressed. *See Assaf,* 178 F.3d at 173.

### 3. *Procedural Due Process*

▮ The determination of whether a plaintiff has adequately alleged a violation of the Fourteenth Amendment's Due Process Clause involves two steps. First, it must be determined whether the plaintiff has proved interference with a protected property interest. *See Board of Regents v. Roth,* 408 U.S. 564, 569–70 & n. 1, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *see also LaChance v. Erickson,* 522 U.S. 262, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998); *Abbott v. Latshaw,* 164 F.3d 141, 146 (3d Cir. 1998); *Larsen v. Senate of Commonwealth of Pennsylvania,* 154 F.3d 82, 92–93 (3d Cir.1998). Second, it must be determined whether the procedures employed by the state to protect that property interest were constitutionally inadequate. *See Abbott,* 164 F.3d at 146; *Larsen,* 154 F.3d at 92–93.

Only Question 1 of the Agreed Verdict Sheet appears to ask the Jury to make a determination as to whether Scully was deprived of a property right. *See* Agreed Verdict Sheet, Quest. 1. Question 1 asked:

> Did the Plaintiff prove, by a preponderance of the evidence, that he held the position of police lieutenant in the Borough of Hawthorne *and* that some or all of the following Defendants deprived him of his constitutional property rights

in that position on account of his political activities?

*Id.* (emphasis in the original).

Question 1 of the Agreed Verdict Sheet appears to be similar to Question 3 of the Agreed Verdict Sheet. Question Three of the Agreed Verdict Sheet asked:

Did the Plaintiff prove by a preponderance of the evidence, that some or all of the following Defendants deprived him of the civil rights of free speech and association secured to the Plaintiff by the Constitution of the United States?

*Id.*

As mentioned, the instant case was tried and the Jury was instructed pursuant to charges prepared, and agreed to, by the parties. The Agreed Jury Charges requested and prepared by the parties concerning the substantive law related to the Section 1983 claims raised by Scully stated:

Plaintiff claims that he held the position of police lieutenant in the Borough of Hawthorne and was thereafter demoted because of his exercise of free speech under the First Amendment of the Constitution. The defendants deny all of these claims.

The First Amendment of the Constitution of the United States gives every citizen the right to freedom of speech, which includes the right to support candidates for political office.

A person may sue for an award of money damages against anyone who, "under color" of any State law or custom, intentionally violates the plaintiff's rights under the Constitution of the United States.

Thus, the plaintiff must prove by a preponderance of the evidence each of the following:

1. That the actions of the defendant(s) were "under color" of the authority of the State of New Jersey;

2. That the plaintiff's speech activities were constitutionally "protected" under the First Amendment;

3. That the plaintiff's exercise of protected First Amendment rights was a substantial or motivating factor in the defendant(s) actions concerning plaintiff;

4. That the defendant(s) acts were the proximate or legal cause of the plaintiff's damages.

State or local officials act "under color" of the authority of the State when they act within the limits of their lawful authority. However, they also act "under color" of the authority of the State when they act without lawful authority or beyond the bounds of their lawful authority if their acts are done while the officials are purporting or pretending to act in the performance of their official duties. An official acts "under color" of the State authority if he abuses or misuses a power that he possesses only because he is an official.

It is agreed between the parties that the plaintiff as a public employee has a right to support political candidates of his choosing, and such support is a form of freedom of speech. Therefore, you may accept as fact that the speech activities of the plaintiff were protected First Amendment expressions.

To prove that his speech activities were a substantial or motivating factor in the defendants'(s') decision, the plaintiff does not have to prove that those speech activities were the only reason the defendants made the decision. The plaintiff need only prove that the speech activities were a substantial consideration that made a difference in or influenced the defendant's(s') decision.

The plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the defendant was the cause-in-fact of the damage plaintiff suffered. An act or a failure to act is a cause-in-fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. . . .

If you find that the plaintiff has established each element of his claim, you must then decide whether the defendant(s) have shown by a preponderance of the evidence that they would not have acted differently concerning the plaintiff even if plaintiff had not exercised his protected speech activity. If you find that the defendant(s) acted for reasons apart from the speech activity, then your verdict should be for the defendant(s). If you find for the plaintiff and against the defendant(s) on their defense, you must then decide the issue of the plaintiff's damages.

Agreed Jury Instructions, pp. 3–4; *see also Tr.* at p. 659, l. 21 to p. 662, l. 14.

The instructions presented to the Jury as to the substantive law governing the Section 1983 claims of Scully were titled "Civil Rights—42 USC Section 1983 (Adverse Employment Decision—Exercise of First Amendment Rights)." *See* Agreed Jury Instruction p. 3. The parties did not request any further instruction relating to the substantive Section 1983 claims of Scully was presented. *See id.* pp. 3–7 (remaining Section 1983 instructions concerned burdens of proof and municipal liability).

Scully argues the Jury properly found he had been deprived of his property interest in the position of Lieutenant in violation of the Fourteenth Amendment to the Constitution of the United States. *See* Opposition Brief at 17–20. The parties, Scully included, however, did not request a jury instruction relevant to the Fourteenth Amendment; nor was one given. As stated, a claim made pursuant to the Fourteenth Amendment required Scully to prove he was deprived of a property interest and that this deprivation occurred without being provided with a meaningful opportunity to be heard. Scully, however, by agreement with Defendants, submitted jury instructions relating only to the alleged violation of his First Amended rights. *See* Agreed Jury Instructions pp. 3–4.

■ At the close of Scully's case, Defendants made a motion for judgment as a matter of law. During argument on that motion, it was observed that, by submission of the Agreed Jury Charges, the Amended Complaint had been further amended, and the case tried, to reflect only those causes of action set forth in the Agreed Jury Charges. *See* Tr. p. 495, ll. 4–6, 11–13 ("This is what you folks have agreed to and you agreed that these charges were adequate for the causes of action that were going to the jury"). Accordingly, Scully cannot now seek to argue he has proven a claim premised upon the violation of his Fourteenth Amendment rights; such a claim was never submitted to the Jury.

The parties, by joint agreement, never requested the jury be instructed concerning the Fourteenth Amendment, the creation of a property interest, or the requirement of a meaningful hearing at a meaningful time. As a result, the jury verdict in favor of Scully cannot be upheld to the extent Scully argues the verdict is premised upon violation of his Fourteenth Amendment right to due process. Question 1 and Question 3 of the Agreed Verdict Sheet, therefore, will be addressed together as requesting damages for violation of Scully's First Amendment right to free speech.

### 4. *Scully's First Amendment Claim*

■ In order for a Scully to establish a prima facie case of retaliatory demotion, he must prove (1) his conduct was "constitutionally protected;" and (2) his conduct was a "substantial factor," or a "motivating factor," in the adverse employment decision. *Mt. Healthy City School District Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *see also Pro v. Donatucci,* 81 F.3d 1283, 1288 (3d Cir.1996); *Watters v. City of Philadelphia,* 55 F.3d 886, 892 (3d Cir.1995); *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1074–75 (3d Cir.1990); *Monsanto v. Quinn,* 674 F.2d 990, 999–1000 (3d Cir.

1982); *Trotman v. Board of Trustees of Lincoln Univ.*, 635 F.2d 216, 224 (3d Cir. 1980); *Raniero v. Antun*, 943 F.Supp. 413, 422 (D.N.J.1996).

### a. *Constitutionally Protected Activity*

As mentioned, the first step of the retaliatory discharge analysis, required Scully to prove his conduct was constitutionally protected. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568. A state actor cannot lawfully terminate an employee for "reasons that infringe upon that employee's constitutionally protected interest in freedom of speech." *Feldman v. Philadelphia Housing Auth.*, 43 F.3d 823 (3d Cir. 1994). To determine if an employee has engaged in protected free speech, a court must consider whether the speech "can fairly be characterized as constituting speech on a matter of public concern." *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993) (citing *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Zamboni v. Stamler*, 847 F.2d 73, 77 (3d Cir.1988); *Czurlanis v. Albanese*, 721 F.2d 98, 103 (3d Cir.1983); *Lees v. West Greene School District*, 632 F.Supp. 1327, 1330 (W.D.Pa.1986)).

In the instant case, the parties stipulated to the fact that the alleged conduct of Scully, relating to his support for the candidacy of Former Mayor Engelhardt, was speech protected by the First Amendment. *See* Agreed Jury Charges at 3–4 ("[Y]ou may accept as fact that the speech activities of the plaintiff were protected First Amendment Expressions"). Accordingly, the only issue presented in connection with the Section 1983 claim raised by Scully is whether Scully presented sufficient evidence, when all reasonable inferences are drawn in his favor, to afford a rational basis for the determination of the Jury that Scully was discharged as a result of his political support for Former Mayor Engelhardt.

### b. *Unconstitutional Demotion*

Pursuant to the second step of the retaliatory demotion analysis, Scully was required to present evidence that his open support for Former Mayor Engelhardt was a "substantial," or a "motivating," factor in the decision to demote him. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568; *Raniero*, 943 F.Supp. at 422.

The Jury determined that Scully had proven, by a preponderance of the evidence, that Mayor Criscitelli, the Borough Council, and Chief Noble violated the First Amendment rights of Scully. *See* Agreed Verdict Sheet Answer to Quests. 1(b), 3. The jury awarded damages totaling $18,000 upon finding Mayor Criscitelli and the Borough Council were liable in Question 1(b), and awarded damages totaling $3,000 upon finding Mayor Criscitelli, the Borough Council, and Chief Noble were liable in response to Question 3. *See* Agreed Verdict Sheet Answer to Quests. 2,4.

As set forth above, the relevant actions of Mayor Criscitelli took place during his tenure as a member of the Borough Council. As such, Mayor Criscitelli was entitled to absolute immunity for his decision not to fund the promotion of Scully. Accordingly, the Motion for Judgment as a Matter of Law is granted as it pertains to Mayor Criscitelli, on the grounds of absolute immunity.

Concerning Chief Noble, there was no evidence presented from which a reasonable jury could have concluded Chief Noble demoted Scully because of Scully's support for Former Mayor Engelhardt. Accordingly, Chief Noble has not, by his actions, violated the constitutional rights of Scully.

Counsel for Plaintiff, in both his opening and closing statements, suggested Chief Noble was part of a conspiracy to demote Scully. Yet, Scully never presented any evidence to suggest a conspiracy between Chief Noble and the other Defendants. In addition, Scully never requested the Jury be charged as to the elements of a conspir-

acy so that such a factual finding could be made. *See* Agreed Jury Charges. Indeed, as discussed, the parties, Scully included, tried the case and presented it to the Jury for decision based upon the Agreed Jury Charges. Scully cannot now be heard to complain that the case was so tried and presented to the Jury.

The evidence presented at trial, with all reasonable inferences drawn in favor of Scully, merely suggests that Chief Noble demoted Scully as a result of the decision of the Borough Council. There was no evidence to suggest Chief Noble was, in any manner, connected with the decision of the Borough Council. Nor was there any evidence to suggest Chief Noble was, in any way, politically motivated when he requested Scully resume the rank of Sergeant.

The evidence demonstrates Chief Noble asked Scully to resume the rank of Sergeant only after having been informed by the Borough Attorney and the Borough Administrator that the promotion was not valid. *See* Tr. p. 308, 1. 20 to p. 311, 1. 18; *id.* p. 312, 11. 6–25; *id.* p. 314, 1. 24 to p. 315, 1. 10. Accordingly, there was no evidence presented, nor could a rational inference from the evidence be drawn, that could serve as a basis for finding Chief Noble participated in the decision to demote Scully. Rather, the only reasonable conclusion supported by the evidence is that Chief Noble, after being informed there was no funding for the promotion of Scully, reacted by requesting Scully resume the position of Sergeant. Further, it appears Chief Noble contemplated that Scully would continue as a Sergeant only until the funding dispute could be resolved. Because there is no evidence to support the conclusion Chief Noble was motivated in his decision by the protected speech activities of Scully, *see Mt. Healthy,* 429

U.S. at 287, 97 S.Ct. 568; *Raniero,* 943 F.Supp. at 422, the Motion for Judgment as a Matter of Law is granted as it pertains to Chief Noble.

Lastly, there was no evidence presented by Scully to support a verdict against the Borough Council. In the instant case, the Jury concluded the speech activities of Scully were a substantial or motivating factor in the decision of the Borough Council not to fund the promotion of Scully. The Borough Council, however, at all times relevant to the instant case, was composed of six members. Five of the six members of the Borough Council voted in favor of denying funding for the promotion of Scully. *See* Exh. 30 (Minutes of 17 December 1997 Meeting of the Borough Council).

Scully bore the burden of proving, by a preponderance of the evidence, that his "exercise of protected First Amendment rights was a substantial or motivating factor in the defendant's(s') actions." Agreed Jury Instructions at 3. Scully, however, as set forth below, has failed to present evidence which could serve as a rational basis for the conclusion the exercise of the free speech rights of Scully was a substantial or motivating factor in the decision of the Borough Council to deny funds for the promotion of Scully.

As mentioned, Scully was required to proffer evidence at trial that would support a rational inference the Borough Council was substantially motivated by Scully's exercise of his protected First Amendment rights. The Borough Council argues there was a complete lack of proof that any individual or official committed a wrongful act that was approved or adopted by the Borough Council. *See* Borough Defendants Moving Brief at 11.[15]

---

**15.** The Borough Council appears to make two separate arguments with respect to this point. First, the Borough Council appears to argue its decision to deny funding for the promotion of Scully cannot serve as the basis for liability because there had been no evidence presented the Borough Council had engaged in the practice of retaliating against employees for political involvement. *See* Borough Defendants Moving Brief at 11. This argument appears to misconstrue the state of the law concerning municipal liability and is contrary

In the instant case, Scully was required to prove, by a preponderance of the evidence, the Borough Council was substantially motivated to deny funds for his promotion by the exercise of his First Amendment Rights. This presents the question of what percentage of the Borough Council must have been spurred by a constitutionally impermissible motive before the Borough Council itself may be held liable for a violation of Section 1983. This question does not appear to be an issue that has been settled in this Circuit.

Some courts that have been presented with this question have determined that a majority of the members of a legislative body must have been motivated by a constitutionally impermissible motive for liability to attach to a municipality or legislative body. See, e.g., Church v. City of Huntsville, 30 F.3d 1332, 1343–44 & n. 5 (11th Cir.1994) (finding single council member did not have the authority to establish municipal policy and refusing to infer discriminatory intent from the silence of remaining council members); United States v. City of Yonkers, 856 F.2d 444, 457–58 (2d Cir.1988). Another court, however, acting in the area of race discrimination, determined liability could be premised upon proof a significant percentage of those who were responsible for the challenged action acted on the basis of an impermissible motive. See United States v. City of Birmingham, 538 F.Supp. 819, 826–29 (E.D.Mich.1982), aff'd, 727 F.2d 560 (6th Cir.1984) (finding proof that two of four members of majority faction on city commission were motivated by racial concerns was sufficient to support liability pursuant to Section 1983).

Determining what proof is necessary to impose civil liability on a legislative body presents a difficult question.

On the one hand, because a municipal ordinance can become law only by a majority vote of the city council, there is a certain incongruity in allowing fewer than a majority of the council members to subject the city to liability under section 1983. On the other hand, because discriminatory animus is insidious, and a clever pretext can be hard to unmask, the law sometimes constructs procedural devices to ease a victim's burden of proof.

Scott–Harris v. City of Fall River, 134 F.3d 427, 438 (1st Cir.1997), rev'd on other grounds, 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998).

The Scott–Harris court, assumed, without deciding, that

in a sufficiently compelling case the requirement that the plaintiff prove bad motive on the part of a majority of the legislative body might be relaxed and a proxy accepted instead. Nevertheless, any such relaxation would be contingent on the plaintiff mustering evidence of both (a) bad motive on the part of at least a significant bloc of legislators, and (b) circumstances suggesting probable complicity of others.

Scott–Harris, 134 F.3d at 438. The Scott–Harris approach appears to strike an appropriate balance between the difficulty of proving the motivation of a legislative body

to the case law cited by the Borough Defendants. A single piece of legislation, properly enacted, may serve as the basis for municipal liability pursuant to Section 1983, even absent proof of a practice or custom of Constitutional violations. See, e.g., Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); Borough Defendants Moving Brief at 10 (noting municipal liability may be premised upon a rule or regulation promulgated, adopted, or ratified by the governmental entity's legislative body). Accordingly, the 17 December 1997 decision of the counsel to deny appropriations to fund the promotion of Scully could serve as the basis for liability without proof of a past pattern or practice.

Second, the Borough Council appears to argue the failure to prove any individual "lawmaking officer" committed a wrongful act demonstrates the Borough Council was not substantially motivated in its decision-making process by Scully's exercise of his First Amendment rights. This argument will be addressed.

and the fact a municipal ordinance can only become law by a majority vote of the municipal council.

In the instant case, Borough Council members Shortway, Lane, Cuccinello, Criscitelli and Metzler voted in favor of denying funds for the promotion of Scully. *See* Exh. 30 (complete vote was five in favor and one opposed). The evidence presented at trial fails to offer any support for the assertion the majority of the Borough Council was substantially motivated in its actions by the political speech or activity of Scully. For example, the Jury specifically determined Councilman Lane was not shown to have denied funds for the promotion of Scully on the basis of the political support Scully gave to Former Mayor Engelhardt. *See* Agreed Verdict Sheet Answer to Quest. 1 (finding Councilman Lane did not deprive Scully of a property right on account of his political activities); *id.* Answer to Quest 3 (finding Councilman Lane did not deprive Scully of his civil rights of free speech and association).

Further, Scully agreed to dismiss Councilwoman Shortway from the instant action after conceding the evidence to support a claim against Councilwoman Shortway "was slim." *See* Tr. p. 496, 11, 13–15. Scully did not object to Councilwoman Shortway being dismissed from the instant action on the grounds of insufficient evidence. *See id.*

At trial, Scully did not present any evidence as to the motivation of Councilman Metzler or Councilwoman Cuccinello.[16] Accordingly, the only person the jury reasonably could have concluded was motivated, in any manner, by the support Scully gave to Former Mayor Engelhardt was Mayor Criscitelli.[17] This constitutes only one fifth of the members of the Borough

Council who voted in favor of denying funds for the promotion. There was no evidence produced at trial to support the conclusion a majority of the Borough Council was substantially motivated by the political activities of Scully.

■ In the absence of proof the majority of the Borough Council acted upon an impermissible motive, it must be determined whether the instant matter presented a sufficiently compelling case for departing from the requirement of proof as to the majority. As set forth in *Scott–Harris*, and adopted herein, liability of a legislative body pursuant to Section 1983, in the absence of proof as to the motivation of the majority of its individual members, must be premised upon:

> (a) bad motive on the part of at least a significant bloc of legislators, and (b) circumstances suggesting the probable complicity of others.

*Scott–Harris*, 134 F.3d at 438.

In the instant case, even if it were assumed Scully had proffered sufficient evidence to support the conclusion a significant bloc of the Borough Council was motivated in its decision by the support Scully provided for Former Mayor Engelhardt, there has been no proof of complicity with the other members of the Borough Council. As stated, the Jury specifically determined Councilman Lane was not shown to have denied funds for the promotion of Scully on the basis of the political support Scully gave to Former Mayor Engelhardt. Further, Scully did not present any evidence as to the motivation of Councilman Metzler or Councilwoman Cuccinello or to suggest Councilman Metzler or Councilwoman Cuccinello acted in complicity with Mayor Criscitelli. In the absence of such proof,

---

16. Councilman Metzler and Councilwoman Cuccinello were dismissed from the instant matter before trial by operation of the 9 November 1998 Stipulation of Dismissal.

17. Even if the "slim" evidence presented as to Councilwoman Shortway were viewed as suf-

ficient to allow a reasonable jury to conclude Councilwoman Shortway acted upon impermissible motivations, the fact remains there was no evidence presented to support the conclusion the majority of the Borough Council so acted.

the possible motivation of a small number of the Borough Council cannot be found to be the motivation of the Borough Council as a whole. *See, e.g., Scott-Harris*, 134 F.3d at 439–40 (finding that proof of an impermissible motive as to two members of a six member council majority could not support a claim for damages pursuant to Section 1983).

Scully has failed to proffer evidence, which when viewed in a light most favorable to him, would allow a reasonable jury to conclude the Borough Council, as a legislative body, was motivated to act by his political support for Former Mayor Engelhardt. Accordingly, Scully has failed to present evidence to support an essential element of his constitutional claim.[18] *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568 (proof of protected speech being substantial or motivating factor in adverse employment decision is necessary to prevail on a Section 1983 claim); *Raniero*, 943 F.Supp. at 422 (same). The Motion for Judgment as a Matter of Law is granted as it pertains to the Borough Council.

### 5. *Punitive Damages*

Scully sought punitive damages pursuant to the claims brought under Section 1983. The Jury awarded punitive damages against Mayor Criscitelli in the amount of $30,000 and against the Borough Council in the amount of $30,500.

The Supreme Court, in *Smith v. Wade*, determined punitive damages may be available in a proper Section 1983 action. *See* 461 U.S. 30, 35–36, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Such damages, however, are available only upon proof of the requisite intent on the part of a defendant. *See Memphis Community School District v. Stachura*, 477 U.S. 299, 306 n. 9, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). In the context of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.*, the Supreme Court recently determined punitive damages could be awarded if a defendant acted with malice or with reckless indifference to Federally protected rights; there was no need to offer proof of egregious misconduct. *See Kolstad v. American Dental Assoc.*, —— U.S. ——, 119 S.Ct. 2118, 2123, —— L.Ed.2d —— (1999). In the instant matter, however, Mayor Criscitelli and the Borough Council are immune from the imposition of punitive damages.

As stated, Mayor Criscitelli is absolutely immune from suit under Section 1983. Accordingly, Mayor Criscitelli cannot be held liable for compensatory or punitive damages premised upon violations of Section 1983.

As concerns the Borough Council, there was no evidence presented to support a finding of liability pursuant to Section 1983. In addition, the Supreme Court has determined that municipalities are exempt from claims for punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258–71, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Scully does not dispute the Borough Council cannot be held liable for the payment of punitive damages. *See* Plaintiff's Reply Brief at 12. Accordingly, the Motion for Judgment as a

---

18. Scully argues there was evidence presented at trial of hostility between the Borough Council and Former Mayor Engelhardt. *See* Moving Brief at 27 (citing Tr. at p. 352, l. 14 to p. 353, l. 17). Scully argues an inference may drawn from this hostility to support the conclusion hostility toward Former Mayor Engelhardt infected the decision of the Borough Council as to Scully. *See id.* Review of the record, as cited by Scully, reveals the testimony at issue did not concern the hostility of the Borough Council toward Former Mayor Engelhardt. Rather, the testimony cited by Scully addressed only individual council members—Councilman Lane, Councilwoman Shortway and Mayor Criscitelli. As set forth above, the Jury did not find Councilman Lane had deprived Scully of his First Amendment rights on account of the support Scully had given to Former Mayor Engelhardt. Further, any proof of hostility on the part of Councilwoman Shortway and Mayor Criscitelli has proven insufficient to support a claim of liability against the Borough Council in the absence of evidence of complicity with other members of the majority that voted in favor of denying funds for the promotion of Scully.

Matter of Law is granted as it pertains to the award of punitive damages.

### D. State Constitutional, Statutory and Common Law Claims

■ Jurisdiction over the state law claims raised by Scully was maintained pursuant to 28 U.S.C. § 1367(a). In the instant case, Scully asserted claims alleging violations of the Constitution of the State of New Jersey, Section 40A:14–147; New Jersey public policy, and for breach of contract. Scully, however, has conceded that no court of the State of New Jersey has addressed whether the constitutional provisions he cites, or Section 40A:14–147, provide for a private cause of action. *See* Plaintiff's Trial Brief at 14. Where a state's highest court has not considered the precise issue, the task of a Federal court is to predict how the state court would resolve the issue if the issue were presented to it. *See C.I.R. v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *Becker v. Interstate Properties,* 569 F.2d 1203, 1205 n. 5 (3d Cir.1977).

■ The Jury was instructed as follows concerning the state law claims raised by Scully:

Plaintiff claims that the Borough of Hawthorne breached a contract between the Borough and the plaintiff. Plaintiff also claims that the Borough demoted him in violation of the New Jersey Tenure Law, N.J.S.A.40A:14–147, which provides that no police officer can be "suspended, removed, fined or reduced in rank … except for just cause." and

in violation of the New Jersey Constitution, Art. I, ¶ 6, which provides as follows:

Every person may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press.

Plaintiff also claims that his demotion violates the public policy of the State of New Jersey as expressed in the tenure law and the New Jersey Constitution. The Borough denies all of these claims and defends on the ground that under the New Jersey budget law, the promotion was "null and void" because it required "an expenditure of money in excess of the amount appropriated."

Agreed Jury Instructions p. 8; Tr, p. 663, l. 9 to p. 664, l. 2.[19] No further instructions concerning the elements of the state law causes of action were requested by either party.

The Jury, based upon the above instruction, was asked:

Did plaintiff prove, by a preponderance of the evidence, that Defendant Borough of Hawthorne either (a) breached a contract between the Borough and the Plaintiff, or (b) demoted him in violation of either the New Jersey Constitution, or (c) demoted him in violation of N.J.S.A. 40A:14–147, or (d) demoted him in violation of the public policy of the state of New Jersey.

Agreed Verdict Sheet, p. 2, Quest. 5.[20] The Jury answered yes to each question pre-

---

**19.** The Borough of Hawthorne also argues that the state law claims presented in the instant action are barred because Scully's sole remedy for his alleged wrongful demotion was to file an action in lieu of prerogative writs. *See* Borough Defendants Moving Brief at 14 (citing N.J. Court R. 4:69–1 *et seq.*); Borough Defendants Reply Brief at 11–12. Scully brought the instant action to recover money damages and to seek reinstatement. Actions for money damages are not maintainable as actions in lieu of prerogative writs. *See Ballantyne House Assoc. v. City of Newark,* 269 N.J.Super. 322, 331, 635 A.2d 551 (App. Div.1993) (actions seeking specific perfor-

mance and money damages not cognizable as action in lieu of prerogative writs); *O'Neill v. Township of Washington,* 193 N.J.Super. 481, 486, 475 A.2d 55 (App.Div.1984) (actions seeking money damages not maintainable as action in lieu of prerogative writs). The Motion for Judgment as a Matter of Law is denied to the extent the Borough of Hawthorne asserts the state law claims could only have been brought as an action in lieu of prerogative writs.

**20.** Scully sought recovery only from the Borough of Hawthorne with respect to the claims

sented concerning violations of the laws of the State of New Jersey and awarded Scully damages in the amount of $8,000. *See id.* Answer to Quests. 5, 6.

### 1. *Claims Brought Pursuant to the Constitution of the State of New Jersey*

The Constitution of the State of New Jersey provides that:

All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and defending property, and of pursuing and obtaining safety and happiness.

Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech

N.J. Const., Art. 1, ¶¶ 1, 6.

■■■ The New Jersey Supreme Court has held that the Constitution of the State of New Jersey may provide a private cause of action premised upon alleged violations of the State constitution. *See Peper v. Princeton Univ. Bd. of Trustees,* 77 N.J. 55, 76–80, 389 A.2d 465. The cause of action arising under the State constitution provides for the "full scope of remedial relief necessary to make [the plaintiff] whole" and provides protections "analogous or superior" to those afforded under the Federal Constitution. *Id.* at 79, 86, 389 A.2d 465.

The Borough of Hawthorne argues that for the same reasons the Section 1983 claims of Scully fail, the claims brought by Scully pursuant to the New Jersey Constitution must also fail. *See* Borough Defendants Moving Brief at 15. As set forth above, Scully presented no evidence from which it reasonably could be concluded any person or entity capable of setting policy for the Borough of Hawthorne demoted

brought pursuant to the laws of the State of

Scully on the basis of his political beliefs or statements.

There was no proof presented at trial from which a jury could have reasonably concluded the Borough Council, as a legislative body, was motivated in its decision making process by the political support Scully provided to Former Mayor Engelhardt. Further, the evidence presented at trial, with all reasonable inferences drawn in favor of Scully, merely suggests that Chief Noble, an agent of the Borough of Hawthorne, demoted Scully as a result of the decision of the Borough Council. There was no evidence to suggest Chief Noble was, in any manner, connected with the decision of the Borough Council. Nor was there any evidence to suggest Chief Noble was, in any way, politically motivated when he requested Scully resume the rank of Sergeant. Accordingly, the Motion for Judgment as a Matter of Law is granted in favor of the Borough of Hawthorne; for the reasons stated, there is no evidence to support the conclusion the Borough of Hawthorne acted to deny Scully his State constitutional right to free speech.

### 2. *Section 40A:14–147 and Breach of Contract*

Section 40A:14–147 provides that no permanent member of a police department may be "suspended, removed, fined or reduced in rank ... except for just cause." *Id.* Further, Section 40A:14–147 mandates a hearing be provided before any such suspension, removal or demotion. *See id.* The failure to provide such a hearing renders the action taken invalid. *See id.*

In 1996, Section 40A:14–147 was amended to provide that "[t]he law enforcement officer may waive the right to a hearing and may appeal the charges directly to any available authority specified by law or regulation, or follow any other procedure recognized by a contract, as permitted by law." *Id.* Scully asserts this clause appears to create a "contractual-style" proce-

New Jersey.

dural remedy for violations of the statute, thus authorizing private causes of action under the statute. *See* Plaintiff's Trial Brief at 14. As mentioned, Scully concedes there are no cases addressing whether this provision of Section 40A:14–147 creates a private cause of action that would allow him to recover for his alleged wrongful demotion. *See id.*

It also appears the Jury, based upon the evidence presented at trial and all reasonable inferences drawn therefrom, could have concluded Section 40A:14–147 was incorporated into the Hawthorne–Local 200 CBA. Pursuant to the Hawthorne–Local 200 CBA, the "rights, authority, duties and responsibilities" of the Borough of Hawthorne were bounded by the authority granted under "the Laws and Constitution of the State of New Jersey, and of the United States." Exhibit 72 at p.3, ¶ A; *id.* pp. 3–4, ¶ B (incorporating the responsibilities of the Borough of Hawthorne under R.S. 40A). Thus, pursuant to the collective bargaining agreement, it appears, extending the benefit of all reasonable inferences to Scully, the Jury found the Borough of Hawthorne was contractually bound by the provisions of Section 40A:14–147. As stated, Section 40A:14–147 provides that no police officer can be "suspended, removed, fined or reduced in rank . . . except for just cause." Section 40A:14–147.

The Hawthorne–Local 200 CBA expressly provides: "In the event of promotion during the year, the salary shall be adjusted proportionately for the remainder of the year." Exh. 72. Scully argues that by failing to pay him the proportionately adjusted wage for a police Lieutenant in 1997, the Borough of Hawthorne violated the Hawthorne–Local 200 CBA. *See* Opposition Brief at 12–14.[21]

■ In order to recover for breach of contract, a plaintiff must first prove the existence of a contract. *See Monroe v. Host Marriot Servs. Corp.*, 999 F.Supp. 599, 605–06 (D.N.J.1998); *cf. Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 389, 393–94, 643 A.2d 546 (1994). Accordingly, the critical question in the instant case is whether the Borough of Hawthorne, by denying funds for the promotion of Scully and requiring him to resume his former rank, acted in violation of the just cause provisions of Section 40A:14–147 and the Hawthorne–Local 200 CBA, which incorporated Section 40A:14–147.

As to the claims raised by Scully alleging breach of contract and violation of Section 40A:14–147, the Borough of Hawthorne argues because Scully was never "promoted" there can be no recovery pursuant to these causes of action. *See* Borough Defendants Moving Brief at 13–15 (citing the Local Budget law); Borough Defendants Reply Brief at 4–7. As stated, there was ample evidence presented at trial from which the Jury could have reasonably concluded Scully had been promoted, and that such promotion was not voided by operation of the Local Budget Law. Accordingly, the Motion for Judgment as a matter of Law is denied to the extent it argues Scully was not promoted.

■ Further, there is ample evidence to support the conclusion the demotion of Scully was a breach of contract and a violation of the Hawthorne–Local 200 CBA, which incorporated the provisions of

21. Whether the promotion of Scully constituted an independent contract between Scully and the Borough of Hawthorne, or whether the promotion of Scully was contemplated by, and therefore a part of, the Hawthorne–Local 200 CBA does not change the instant analysis. The fact remains there was sufficient evidence presented to support the conclusion of the Jury that Scully had been validly promoted. After arriving at this conclusion, it would have been reasonable for the Jury to conclude, based upon the evidence presented at trial, Scully could have been demoted only upon a finding of just cause, as set forth in Section 40A:14–147 and incorporated into the Hawthorne–Local 200 CBA, and was entitled to be paid the salary of a police Lieutenant.

Section 40A:14–147.[22] Scully proffered sufficient evidence to support the conclusion of the Jury that he had been promoted.

On 11 November 1997, Former Mayor Engelhardt appointed Scully to the position of Lieutenant in the Hawthorne Police Department. *See* Tr. p. 343, ll. 315–20, p. 344, ll. 16–22 (Former Mayor Engelhardt); Trial Exh. 42. In the courtroom of the municipal building, Former Mayor Engelhardt administered the oath of office to Scully in the presence of several witnesses, including Scully's family and police captain John Shannon, the highest ranking police officer on duty. *See* Tr. p. 62, l. 19 to p. 64, l. 6 (Scully); *id.* p. 344, ll. 16–25 (Former Mayor Engelhardt).

Scully signed the oath and the papers were filed with the municipal clerk. *See* Tr. p. 64, ll. 7–11. Scully's promotion filled a vacancy in departmental staffing for the position of Lieutenant. *See id.* p. 100, l. 16 to p. 101, l. 2 (Scully); *id.* p. 267, l. 22 to p. 268, l. 1 (Chief Noble); *id.* p. 346, l. 25 to p. 347, l. 6 (Former Mayor Engelhardt).

The finding that the promotion of Scully constituted a contract between Scully and the Borough of Hawthorne, as contemplated by the Hawthorne–Local 200 CBA, represents a reasonable, justifiable inference from the evidence presented at trial. The evidence presented at trial further demonstrated Scully was demoted on 29 December 1997, without cause related to his job performance. The conclusion that this action constituted a breach of contract, and a violation of Section 40A:14–147, as incorporated in the Hawthorne–Local 200 CBA, is amply supported by evidence proffered at trial. Accordingly the Motion for Judgment as a Matter of Law is denied to the extent it challenges the verdict of the Jury concerning breach of contract and violation of the Section 40A:14–147 by the Borough of Hawthorne.

### 3. *Violation of New Jersey Public Policy*

The Supreme Court of the State of New Jersey first recognized a claim for violation of public policy in *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505 (1980). The New Jersey Supreme Court stated:

> [A]n employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy. The sources of public policy include legislation, administrative rules, regulations or decisions; and judicial decisions. . . .

> An employee who is wrongfully discharged may maintain a cause of action in contract or tort or both. An action in contract may be predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy. An action in tort may be based on the duty of an employer not to discharge an employee who refused to perform an act that is a violation of a clear mandate of public policy.

*Pierce*, 84 N.J. at 72, 417 A.2d 505; *see also Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 90–91, 609 A.2d 11 (1992); *Velantzas v. Colgate–Palmolive Co.*, 109 N.J. 189, 192–93, 536 A.2d 237 (1988) (dis-

---

**22.** Scully, in his trial brief, stated there are no cases interpreting Section 40A:14–147 as creating a private cause of action. *See* Plaintiff's Trial Brief at 14 n. 1. Research did not disclose any case in the courts of New Jersey or the Federal Courts that interpreted Section 40A:14–147 as creating a private cause of action. The Borough of Hawthorne, however, does not argue Section 40A:14–147 does not create a private cause of action. In addition, the Borough of Hawthorne agreed to have the jury charged as to Section 40A:14–

147. Accordingly, recovery pursuant to this provision cannot now be challenged on the grounds Section 40A:14–147 does not create a private cause of action. *See Mosley*, 102 F.3d at 90; *see also* Rule 50(b) Advisory Committee's Note; *Simmons*, 947 F.2d at 1077. The Agreed Jury Charges in the instant case shall stand as the law of the case, although no express determination will be made as to whether Section 14–147 does, in fact, create a private cause of action.

missal for conducting investigation into alleged gender discrimination would, if proven, support claim pursuant to *Pierce* ).

The Borough of Hawthorne argues Scully, for the first time, raised the claim that his failure to have his promotion funded by the Borough Council constitutes a cause of action for wrongful termination pursuant to *Pierce* in the Opposition Brief. *See* Borough Defendants Reply Brief at 10.[23] The Borough of Hawthorne also argues that to the extent the public policy claim of Scully rests upon violation of the New Jersey Constitution, such claim must fail for the same reasons the Section 1983 claim against the Borough Council failed.

To the extent the public policy claim against the Borough of Hawthorne is premised upon denial of the state constitutional right to free speech, such claim must be denied for the reasons previously stated. Scully has not proven the actions of the Borough of Hawthorne were motivated by his political support for Former Mayor Engelhardt. To the extent Scully seeks to rely upon Section 40A:14–147 as a source of public policy, it appears the public policy claim and any damages recoverable pursuant to such a claim are merely duplicative of the claims of Scully for breach of contract and violation of Section 40A:14–147. Because there is ample evidence to support the verdict of the Jury as to breach of contract and violation of Section 40A:14–147, there is no need to address whether Section 40A:14–147 serves as a possible independent source of public policy or whether *Pierce* would apply to a cause of action in which the plaintiff was demoted as opposed to dismissed.[24]

### 4. *Damages*

Pursuant to the state law claims raised by Scully, Scully was awarded damages in the amount of $8,000. In addition, Scully was reinstated to the position of Lieutenant. *See* Tr. p. 714, l. 25 to p. 715, l. 2. Defendants challenge the reinstatement of Scully as being an inappropriate remedy in this matter. *See* Individual Defendants Reply Brief at 7–8. Defendants also challenge the reasonableness of the award of $8,000 in compensatory damages. *See* Individual Defendants Reply Brief at 7–8.

■ Defendants argue Scully should *not be reinstated because Scully was not the victim of a "true demotion" but rather had his promotion rendered invalid by operation of the Local Budget Law.* As stated, however, the finding that Scully was promoted, and that his promotion was not voided by operation of the Local Budget Law, is supported by the evidence proffered at trial. As a result, the argument of Defendants concerning the reinstatement of Scully is without foundation. The reinstatement of Scully was the proper remedy. *See Geraghty v. Berkeley Heights,* 259 N.J.Super. 350, 359, 613 A.2d 497 (Law Div.1990); *DeStefano v. Township of Washington,* 220 N.J.Super. 273, 279, 531 A.2d 1090 (Law Div.1987).

■ Concerning the award of $8,000 in damages, Scully, at page seventeen of the Opposition Brief states his calculation of the lost back pay yields the amount of $5,626.57. *See* Opposition Brief at 17 n. 2. This figure represented lost wages from 11 November 1997 through the date of the verdict in the instant case, 23 March 1999. Scully attempts to attribute the difference between the $8,000 and the $5626.57 as

---

**23.** This assertion by Counsel for the Borough Defendants appears questionable given the explicit citation to *Pierce* in the trial brief submitted by Scully and the approximately two page discussion of the application of *Pierce* to the instant case contained in that brief. *See* Plaintiff's Trial Brief at 17–19.

**24.** The public policy claim raised by Scully is also not addressed herein because the parties failed to submit jury instructions sufficient to allow for review of the Jury verdict. The vague instructions did not distinguish any particular proof as being required to support a claim pursuant to *Pierce.* Accordingly, it cannot now be determined whether there was sufficient evidence presented to support a grant of relief.

constituting compensation for lost overtime and pension benefits.[25] No evidence or testimony regarding these matters was presented at trial in a manner that would allow the jury to make a determination as to proper compensation. *See generally* Tr.; *see also* Individual Defendants Reply Brief at 8. Accordingly the $8,000 judgment shall be reduced to $5,626.57.

### E. *Attorneys' Fees*

Scully requested attorneys' fees and costs pursuant to Section 1988 of Title 42 ("Section 1988"). Section 1988 allows for the recovery of attorneys' fees in connection with successful claims brought pursuant to Section 1983. *See* 42 U.S.C. § 1988. In the instant case, judgment as a matter of law has been granted in favor of the Defendants as to all claims brought by Scully pursuant to Section 1983. Accordingly, Scully is not entitled to an award of attorneys' fees.

### *Conclusion*

For the foregoing reasons, the Motion for Judgment as a Matter of Law is granted in part and denied in part. Judgment in favor of Scully shall be entered in the amount $5,626.57 against the Borough of Hawthorne for breach of contract and violation of Section 40A:14–147. Scully is reinstated to the position of lieutenant effective 11 November 1997.

---

**25.** Scully, however, states the $5,626.57 figure reflects both lost wages and four hours of lost overtime. No evidence was presented at trial as to the value of lost benefits or overtime not already included in the $5,626.57 damages calculation submitted by Scully. Scully cites the testimony of Chief Noble as support for the $8,000 damages award. *See* Opposition Brief at 17 (citing Tr. at p. 267, 11. 9–17). The portion of the record cited by Scully, however, simply notes the contribution to the pension of Scully would be a "little bit higher" because Scully would be earning a higher salary. *See* Tr. at p. 267, 11. 9–17. No other proof concerning the actual value of lost overtime or benefits was presented.